JONATHAN STURGIS AND THOMAS DOUGLASS *v.* SHEPHERD KNAPP AND GEORGE BRIGGS AND THE TROY AND BOSTON RAILROAD COMPANY.

(IN CHANCERY.)

*Chancery. Injunction. Damages in consequence of an injunction. Bond. Railroads. Receiver. Evidence.*

If a court of chancery grants an injunction without making an order that the party seeking it shall pay the party enjoined such damages as he may sustain in consequence of the injunction, in case it be finally decided that it ought not to have been granted, or requiring a bond to secure the payment of such damages, the party enjoined cannot recover any damages resulting from the injunction.

Sturgis et al. *v.* Knapp et al.

But if such an order be made, or a bond required and furnished, it is within the power of the court of chancery, independently of the statutes or chancery rules of this State, on the dissolution of the injunction to ascertain, by reference to a master, or otherwise, the damages caused by the injunction and decree their payment by the party seeking the injunction; and the proceeding is independent of any action or recovery upon the bond, this enforcement of which, *as such,* requires an action at law.

But when a bond is required and given, the court of chancery cannot award greater damages than the penalty of the bond, POLAND and PIERPOINT, J. J. dissenting.

*It seems* that if the damages to the different parties enjoined are clearly *several,* the injunction bond will be held to be several, though its language would, in ordinary cases, indicate merely an obligation to the defendants jointly. PIERPOINT, J.

The agreement of parties after an injunction has been granted, that after the testimony has been taken, a *pro forma* decree shall be made by the chancellor, for the purpose of carrying the cause by appeal to the supreme court and having it there finally decided with less delay than otherwise, is no ground why, when the injunction is finally ordered to be dissolved by the supreme court, the party enjoined should not recover his damages occasioned by the injunction, as well after as before the agreement was made.

K. and B., as trustees of the bondholders of a railroad, made a lease thereof to a railroad company. The orators, who owned one quarter of the bonds, brought a bill, for themselves and all other bondholders who should choose to come in and prosecute, against K. and B. and the lessees to set aside the lease; and an injunction was granted against the use and occupation of the road by the defendants, the court, however, first requiring a bond to be filed by the orators to pay to the defendants such damages as they should sustain from the injunction, if it should be decided to have been improperly granted; *Held,* the bill having been dismissed, that the relation of the orators to the trustees was such as to excuse the lessees from paying rent to the trustees during the time the road was kept out of their hands by the injunction; and therefore that the orators should pay the trustees as damages that proportion of the rent, during such time, which those bondholders, not participating in the prosecution of the bill, were entitled to.

*Held,* that the defendants were not entitled to be allowed as damages the amount paid by them as counsel fees for resisting the application for the injunction or for defending the suit upon its merits.

*Held,* that the fact that a receiver was appointed and took possession of the road at the time the injunction was granted, and operated it until the bill was dismissed, did not prevent the defendants from recovering damages in consequence of the injunction, but that the net receipts of the receiver were to be taken into account and applied in reduction of the damages.

*Held,* that upon the question of the amount of damages incurred by the lessees on being deprived of the possession of the road by the injunction, evidence

of the income of the road during a period immediately preceding the granting
of the injunction, and during one immediately succeeding its dissolution, was
competent, as also were the opinions of witnesses acquainted with the business
of the road and the expenses of operating it, as to the value of its use to the
lessees during the time they were deprived of it by the injunction.

The various items in the lessees' claim for damages, by reason of the injunction,
considered, and allowed or disallowed according to their merits.

APPEAL from the decree of the court of chancery.

The bill was brought on the 4th of April, 1857, for the pur-
pose of setting aside a certain lease of the Western Vermont
Railroad, made on the 16th of January, 1857, to the Troy &
Boston Railroad Company by the defendants, Knapp and Briggs,
who were then in possession of the former road, as trustees of
the first mortgage bondholders, under a decree of foreclosure, which
expired without redemption on the 1st of January, 1857. This
lease was duly executed, acknowledged and recorded, and was
in the following words:

"This indenture, executed the 16th day of January, 1857,
between Shepherd Knapp and George Briggs, trustees of the
first mortgage on the Western Vermont Railroad, in the State of
Vermont, on the one part, and the Troy & Boston Railroad Com-
pany, on the other part, witnesseth;

That the said trustees hereby lease and demise to said com-
pany, for the period of ten years, from and including this date,
subject to the conditions hereinafter expressed, the said Western
Vermont Railroad, as located and heretofore occupied under the
charter of the Western Vermont Railroad Company, with all the
buildings, privileges and appurtenances thereto belonging, and the
full right to hold, use and operate the same in conformity with
said charter, together with all the tools, implements and furniture
belonging to said trustees, and now on or about said road, and
used for operating and repairing the same.

And the said company hereby covenant and agree with the
said trustees to pay them as rent for said road and property the
sum of twenty-five hundred dollars per month, for the first year of
said lease, and the sum of three thousand dollars per month during
all the succeeding years thereof, in the manner following: The
rent for that portion of the month of January, 1857, included in

lease, and said the rent for the month of February, 1857, to be paid on the first day of February, 1857, and the rent for every succeeding month, during the continuance of this lease, to be paid in advance on the first day of the month.

And it is hereby mutually agreed that in case of failure on the part of said company to make any of said monthly payments of rent to said trustees, within ten days after the same becomes due, as aforesaid, said trustees shall have the right forthwith to terminate this lease and to re-enter upon and take and retain possession of said railroad and property without legal process.

And said company further covenant and agree with said trustees to return said road and property, both real and personal, at the termination of this lease, in as good condition and repair, in all respects, as it now is in, natural wear only excepted.

And it is agreed that Charles Linsley, of Rutland, Vermont, and either one of the present railroad commissioners of the State of New York, provided his attendance shall, upon reasonable application, be procured by said company, shall pass over and examine said railroad and property, as soon hereafter as the state of the weather and the season render it practicable, and make an examination as to the condition and state of repair of the same, and that upon the termination of this lease from any cause, the same parties, or the survivor of them, if either is living and where his attendance can be obtained, shall make a like examination for the purpose of determining whether said road and property are in the condition and state of repair required by this agreement, and if not, to appraise the difference in value, the decision so made to be final between said company and said trustees.

And it is hereby further understood and agreed that this lease is made subject to the following condition : That if a majority in amount of the bondholders under said first mortgage upon said road, shall, within ninety days from the date hereof, unite in giving a notice in writing to said company, of their desire to terminate this lease at the expiration of one year from the date hereof, then said lease shall so terminate, and shall stand valid between the parties only as a lease from one year from the date hereof, subject, however, to the other provisions of this indenture.

And it is hereby further agreed that nothing herein contained

shall be construed as creating any personal liability whatever on the part of said trustees, or of the directors of said company, either for a failure, from whatsoever cause, in the performance of any of the stipulations of this indenture, express or implied, or for any other matter or thing arising from, or in consequence of, this indenture, in any manner whatsoever."

The claims of the several parties in respect to the validity of such lease, and the general purport of the bill, answers and testimony are stated in the report of a former decision of the supreme court in this case, in 31st Vermont Reports, page 1 to 64.

In conformity with the prayer of the bill, KITTREDGE, Chancellor, on the 8th of May, 1857, granted an injunction upon the defendants against using or controlling the railroad in question until the further order of the court, and appointed Christopher M. Davey receiver to take possession of the road during the pendency of this suit. This injunction was, by order of the chancellor, not to go into effect until the compalinants should file with the clerk of the court their bond with sufficient surety, in the penal sum of thirty thousand dollars, conditioned to pay to the defendants such damages as they might sustain by reason of the injunction, if the court should eventually decide that it should not have issued.

In conformity with this order, the following bond was immediately filed, and the receiver thereupon took possession of the road :

"Jonathan Sturgis and Thomas Douglass *vs.* Shepherd Knapp and George Briggs and Troy & Boston Railroad Company. In Chancery. Bennington County.

Know all men by these presents, that we, the said Jonathan Sturgis and Thomas Douglass, as principals, and Myron Clark, of Manchester, in said county of Bennington, as surety, are held and firmly bound unto the said Shepherd Knapp and George Briggs and the said Troy & Boston Railroad Company, the said defendants in the above entitled cause, in the sum of thirty thousand dollars, for the payment of which sum, well and truly to be made to the said defendants, their attorneys, executors, administrators and assigns, we bind ourselves, our heirs, executors and administrators firmly by the presents. Signed with our hands

Sturgis et al. *v.* Knapp et al.

and sealed with our seals, and dated this sixth day of May, A. D. 1857.

The condition of the above obligation is such that whereas the said complainants in the above entitled cause have filed their bill in chancery, against the said defendants in said cause and therein prayed for an .injunction : Now, therefore, if the complainants aforesaid shall well and truly pay, or cause to be paid, to the defendants aforesaid, such damages as they may sustain by reason of said injunction, if the court shall decide that the complainants were not legally entitled to such injunction, such damages to be ascertained by reference to a master, or as the chancellor shall direct, then this obligation to become void ; otherwise to remain in full force.

Signed, sealed and delivered in presence of George Barker, as to Jonathan Sturgis and Thomas Douglass. Edwin Edgerton, witness to signature of Myron Clark.

JONATHAN STURGIS, [L. S.]
THOMAS DOUGLASS, [L. S.]
MYRON CLARK, [L. S.]"

The parties then entered into the following written stipulation :

" It is mutually agreed by counsel for both parties that the testimony shall be taken on both sides, soon after the adjournment of the county court, and at the term of the court aforesaid the case shall be left open for the parties to take their testimony, on a day to be agreed on, and said testimony shall be filed and a decree entered for the plaintiff *pro forma*, so that the case may pass to the supreme court at next term.

Bennington, December 15, 1857."

In accordance with this stipulation, testimony was then taken on both sides, and a *pro forma* decree was entered for the orators, from which the defendants appealed to the supreme court, where the cause was finally decided at the general term in July, 1858. The judgment of the supreme court was that the decree of the chancellor be reversed, and the case remanded to the court of chancery with instructions to dismiss the bill with costs, making such other orders in the case as should be required to preserve the interests of all concerned.

The court of chancery thereupon, at the December Term,

1858, in Bennington connty, referred the cause to three special masters to determine, and report to the court the amount of damages sustained by the defendants respectively, by reason of the granting of the injunction.

The receiver surrendered the road to the Troy & Boston Railroad Company on the 1st of January, 1859.

The defendants filed the following specifications of their respective claims for damages.

Claims of Knapp and Briggs, trustees :

1. Loss of the rent of the Western Vermont Railroad from May 1st, 1857, to January 16th, 1858, at thirty thousand dollars per year, under lease of the same to the Troy & Boston Railroad Company, of which rent said trustees were deprived by the granting of the said injunction, $21,250.

2. Loss of rent of same road under same lease from January 16th, 1858, to January 1st, 1859, at $36,000 per year $34,500.

3. Counsel fees and expenses incurred in the matter of said injunction, $700.

4. Interest on these items as may be legally allowed.

Claims of the Troy & Boston Railroad Company :

1. Expenses incurred by the defendants in resisting the orator's application for the injunction, including counsel and witness fees, and for the time, trouble, and expenses of the defendants in and about said business, as also like expenses in procuring a dissolution of the injunction, $4,000.

2. For losses sustained in running the Western Vermont Railroad, under a lease from the 16th day of January, 1857, to the 8th day of May, 1857, over and above the receipts, $8,000.

3. Loss of the use, rents, profits and income of the Western Vermont Railroad from the 8th day of May, 1857, to the 1st day of January, 1859, being nineteen months and twenty-three days, over and above the annual rent of said road, and the ordinary repairs of the superstructure of the same, and the loss sustained while running the same from the 16th of January, 1857, to the 8th day of May, 1857, $16,472 21.

4. Loss in difference of the rent of said Western Vermont Railroad between the first and subsequent years reserved in the lease of the same, $6,000.

5. Loss on the sale of cars, which had been purchased to run and operate the Western Vermont Railroad, and which were sold after the granting of the injunction, $250.

6. Destruction by fire of the depot at Wallingford on said road while the same was in the hands of the receiver under said injunction, if the defendants are liable for the same under the lease, $1000.

7. Expenses incurred in taking an inventory of the personal property which had been leased, and which was on the line of said Western Vermont Railroad, and in shops and depots, on the 8th day of May, 1857, at the time of granting the injunction, and also like expenses in taking an inventory of said property upon the dissolution of the said injunction on the 1st day of January, 1859, amounting in the whole to $371 31.

8. Loss and depreciation in the value of the personal property which went into the hands of the receiver May 8th, 1857, under the injunction, and that returned January 1st, 1859, upon the dissolution of the injunction, as shown by the inventories and appraisals made at the respective times aforesaid, $2387 87.

9. Cash paid for re-rolling iron, $1,093 52.

10. Expenses incurred in removing wood and ties from the line of the Western Vermont Railroad after the injunction was granted, and where the same had been delivered to be used in operating and repairing said road, $903 42.

11. Expenses incurred and to be incurred by the Troy & Boston Railroad Company to recover the business had and enjoyed by the Western Vermont Railroad at the time of giving the lease by the trustees to the defendants, the Troy & Boston Railroad Company, on the 16th day of January, 1857, which had been lost in consequence of the receiver appointed upon the granting of the injunction having given notice to all roads to discontinue billing freight or selling tickets over the Western Vermont Railroad, and thereby diverting all the through business from said road, and greatly diminishing the local business on the same by advancing the rate of freight during the time the road was in the hands of the receiver, above what had been previously charged, $10,000

12. Damages sustained by the Troy & Boston Railroad Com-

pany, as lessees of the Western Vermont Railroad, in consequence of a decrease and diminution of business on said Western Vermont Railroad, by reason of granting said injunction, and continuing the same for the period of nineteen months and twenty-three days after the same came into their possession by the dissolution of said injunction, $10,000.

13. Depreciation in the value of the buildings, bridges, iron, and superstructure of said road while in the use and possession of the receiver under the injunction, from the 8th day of May, 1857, to the 1st day of January, 1859, $25,000.

14. Damages sustained by difference in the cost of wood for running and operating the Troy & Boston Railroad, which had been purchased for the use of said road (prior to the granting of said injunction) on the line of the Western Vermont Railroad, and would still have been but for the granting of said injunction, $2,500.

15. Damages sustained by the Troy & Boston Railroad Company by loss of business on their road, after granting the injunction on the Western Vermont Railroad, to wit, from the 8th day of May, 1857, to the 1st day of January, 1859, $8,500.

16. Rent of the Western Vermont Railroad for nineteen months and twenty-three days, while the same was in the hands of the receiver under the injunction, amounting to the sum of fifty-five thousand seven hundred and fifty dollars, *which the Troy & Boston Railroad Company claim as a part of their damages*, if the court are of opinion that they are liable for rent while they were dispossessed of said road under said injunction, but which this defendant does not admit, $55,750.

17. Loss in interest on cost of personal property which had been purchased to run and operate the Western Vermont Railroad under the lease and for which they had no use during the continuunce of the injunction, $1,200.

18. Interest on each of the above items of damage from the time they accrued.

At the December Term, 1859, the masters made the following report:

The undersigned, special masters, to whom the above-entitled cause was referred by the foreging orders, beg leave to report to

your Honor, that they duly notified the several parties of the time and place when and where they would attend to the duties assigned them by the foregoing orders, by causing personal notice to be served on the solicitors of the said several parties. The said Sturgis and Douglass appeared before us by their solicitors, Messrs. Tracy, Isham, Edgerton and Canfield, and the said Knapp and Briggs by their solicitor, E. J. Phelps, and the Troy & Boston Railroad Company by their solicitors, Messrs. Robinson, Linsley and Peck, and were duly heard in the premises in relation to the several matters before us. Knapp and Briggs, as trustees, presented a specification of their claims against the orators for damages sustained in consequence of the injunction in this cause. Said Knapp and Briggs then gave in evidence a lease executed by them to the Troy & Boston Railroad Company, on the 16th day of January, A D. 1857, and set forth in the answer of the said Knapp and Briggs in this cause.* The due execution of this lease by said Knapp and Briggs and said Troy & Boston Railroad Company was admitted by all the parties. The said Knapp and Briggs then proved that said Troy & Boston Railroad Company, under and by virtue of said lease, took possession of the Western Vermont Railroad, with all the property and appartenances therein mentioned, and operated and used said road from the 16th day of January to the 8th day of May, A. D. 1857 ; and that said Troy & Boston Railroad Company had paid to said Knapp and Briggs the rent reserved in and by said lease, from the 16th day of January, A. D. 1857, to the 1st of May, 1857, and were abundantly able and willing to pay said rent if said road had not been taken from the possession of the Troy & Boston Railroad Company and placed in the hands of C. M. Davey, as receiver, under and by virtue of an injunction and order issued by this court in this cause.

That on the Western Vermont Railroad being taken out of the hands of the Troy & Boston Railroad Company both Knapp and Briggs and the Troy & Boston Railroad Company considered that the right to receive and the obligation to pay rent was suspended by said order, and for that reason, Knapp and Briggs did not demand the rent accruing after said order, and the Troy & Boston Rail-

* See ante p. 488.

road Company did not offer to pay the same'; but if the rent had been demanded by Knapp and Briggs of the Troy & Boston Railroad Company, they would have declined to pay it; and that the rent reserved in and by said lease, from the 1st day of May, A. D. 1857, to the 1st day of January, 1859, is now due and unpaid.

By the terms of the lease, the rent was payable monthly in advance; the amount of rent due, including the month of May, A. D. 1857, up to and including the month of December, 1858, for principal is fifty-five thousand seven hundred and fifty dollars; casting interest on this sum monthly as the rent became due and payable, from the 1st of May, A. D. 1857, to the 1st of April, A. D. 1860, at six per cent., the interest is six thousand nine hundred and eighty-six dollars and twenty-five cents, which, added to the principal sum, would make the amount due for rent and interest up to the 1st of ·April, 1860, sixty-two thousand seven hundred and thirty-six dollars and twenty-five cents. But both the parties to the lease were, at the time of its execution, domiciled in and citizens of the State of New York. The rent reserved in and by said lease was payable in the State of New York, and by the law of the State of New York said Knapp and Briggs were entitled to receive from said Troy & Boston Railroad Company interest at the rate of seven per cent. from the time said rent became due and payable up to the time the same was paid, as a compensation of the non-payment of rent at the time stipulated. If, under these circumstances, the court are of the opinion that interest should be allowed at the rate of seven per cent. instead of six, then there should be added to the sum above stated, one thousand one hundred and sixty-four dollars and thirty-seven cents, making the whole sum due for rent on this basis, sixty-three thousand nine hundred dollars and sixty-two cents. This computation includes the rent for the use of the road from the 1st of May to the 8th of May, A D. 1857, during which time said road was in possession of, and operated by, the Troy & Boston Railroad Company, and they were not prevented from running said road by reason of said injunction. If the rent from the 1st to the 8th of May, 1857, and the interest thereon as included in the above computation should, in the opinion of the court, be deducted from the sixty-three thousand nine

hundred dollars and sixty-two cents above stated, the balance due for rent from the 8th of May, 1857, to the 1st of January, 1859, is sixty-three thousand ninety-seven dollars eighty-six cents. The right to recover by the Troy & Boston Railroad Company against said Sturgis and Douglass any compensation for having said road taken out of the hands of said Troy & Boston company by reason of said injunction and order was resisted by said Sturgis and Douglass on the ground that said Knapp and Briggs had the legal right to recover said rent from said Troy & Boston Railroad Company, notwithstanding said road was taken out of their possession ; that said lease contained no covenants of title or for quiet enjoyment, either express or implied ; and that said Troy & Boston Railroad Company were bound to pay said rent whether they acquired any right to said road by virtue of said lease or not, and consequently, that taking said road from the possession of said Troy & Boston Railroad Company could not operate to the prejudice of said Knapp and Briggs, or their right.

Whether the defendants, Knapp and Briggs, are entitled to the said amount for the loss of such rent, the masters leave for the court to determine.

The said Knapp and Briggs also presented a claim against said Sturgis and Douglass for paying counsel and other expenses in resisting the injunction and order granted in this case. The original bill and subpœna was issued and served on the parties sometime in April, 1857; application was then made to the chancellor for the injunction which was afterwards granted, and notice of this application duly served on the defendants. Knapp and Briggs thereupon retained counsel who drew up their answer, prepared affidavits, attended before the chancellor on the hearing of this motion for the injunction, at several different times, coming from New York for that purpose, examined authorities, and argued the question pending on this motion before the chancellor. Knapp and Briggs paid to E. J. Phelps, their solicitor, for his services in resisting this application for an injunction the sum of five hundred dollars, in 1857, which was a reasonable compensation for his services, including his necessary expenses. Knapp and Briggs were legally liable and could have been compelled to pay said sum to said Phelps for his services, and paid the same in good

32

Sturgis et al. *v.* Knapp et al.

faith. All the services and expenses caused by this charge accrued before the injunction was granted. Sturgis and Douglass resisted the allowance of this claim on the ground that these expenses were incurred by Knapp and Briggs before the injunction was granted, and therefore could not be said to have been incurred in consequence of the injunction, and consequently were not within the order of reference to this board. If this item in Knapp and Briggs' claim against Sturgis and Douglass ought to be allowed, interest should be added thereto at the rate of seven per cent., from the 1st day of May, 1858, to the 1st of April, 1860, amounting to sixty-seven dollars and eight cents, and making in the whole the sum of five hundred and sixty-seven dollars and eight cents.

The orators' counsel further insisted, as a matter of law, that the injunction did not operate to prevent Knapp and Briggs from enforcing the rent against the Troy & Boston Railroad Company, as Knapp and Briggs did not in any manner deforce them.

The Troy & Boston Railroad Company presented a specification of their claims against Sturgis and Douglass, in consequence of said injunction and order.*

No. 1 on said specification for counsel fees and expenses in resisting the injunction granted in this suit, and procuring a dissolution of said injunction. The facts in relation to this item of their claim, so far as relates to the commencement of this suit, and the application for the injunction, and hearings thereon, have been previously stated, and therefore are not here repeated.

The Troy & Boston Railroad Company, on being served with the bill in this suit, and notice of an application for an injunction, retained and employed John S. Robinson, Esq., of Bennington, and Charles Linsley, of Rutland, solicitors of this court, to resist the granting of said injunction and defend said suit. Both of these gentlemen assisted in drawing up the answer of the Troy & Boston Railroad Company, examining authorities, and attending on several occasions before the chancellor on the hearing of said motion. Mr. Linsley, for his services up to the time the injunction was granted, charged to the Troy & Boston Railroad Company, including his expenses, the sum of four hundred and thirty dollars and thirty cents, which sum was a reasonable

* See ante p. 492.

Sturgis et al. *v*. Knapp et al.

charge for these services and expenses, and was duly paid by the Troy & Boston Railroad Company; and Mr. Robinson charged to said Troy & Boston Railroad Company for his services and expenses in the same business and during the same period, the sum of five hundred dollars, which was a reasonable sum for his services and expenses in this suit up to the time of granting said injunction—which sum was duly paid by said Troy & Boston Railroad Company.

These charges, amounting to nine hundred and thirty dollars and thirty cents, were necessarily incurred by the Troy & Boston Railroad Company in resisting the motion for said injunction; and the interest thereon from the 1st of May, 1858, to the 1st day of April, 1860, is one hundred and six dollars and ninety-eight cents, making in the whole the sum of one thousand and twenty-seven dollars and twenty-eight cents. After the injunction was granted, the Troy & Boston Railroad Company retained and employed Pierpoint Isham, Esq, as their solicitor, with Messrs. Robinson and Linsley to defend said suit. A *pro forma* decree was entered in this suit, by agreement of the parties, confirming the injunction, a copy of which agreement annexed to the decree was given in evidence. It was also shown, that this agreement was made verbally before the taking of testimony, which was taken pursuant to it, and the agreement then reduced to writing, and that the object of making it was because the merits of the case having been argued on the motion for injunction, it was desirable to have the cause heard on appeal, as speedily as possible; and the case passed to the supreme court by appeal, when the same was argued on the merits at two different terms by Messrs. Robinson, Isham and Linsley, on the part of the Troy & Boston Railroad Company, and for their services for attending to the suit from the time the injunction was granted until the injunction was dissolved by order of the supreme court, Mr. Isham charged the sum of six hundred and four dollars, Mr. Robinson the sum of five hundred dollars, and Mr. Linsley the sum of five hundred dollars; making in the whole the sum of one thousand six hundred and four dollars. These services were charged at reasonable prices, were necessarily incurred by the Troy & Boston Railroad Company in defending said suit,

and they were legally liable to pay, and have paid the same, and if the sums thus paid by the Troy & Boston Railroad Company for the purposes and under the circumstances aforesaid, are, in the opinion of the court, properly chargeable as an item of damages occasioned by said injunction, interest should be added thereto, from the 1st day of May, 1859, to the 1st of April, 1860, at the rate of six per cent. per annum. In allowing interest upon solicitors' bills against their clients, we adopted the principle of allowing interest after one year from and after the time the services were performed, or bills presented, which is the usual practice, as we understand it, with solicitors in Vermont. The interest upon these items, computed on the principle above stated, is eighty-nine dollars and eighty-two cents, which, added to the principal, is one thousand six hundred and ninety-three dollars and eighty-two cents. No efforts were made by said Troy & Boston Railroad Company to vacate said injunction after it was granted, until a final hearing of the cause in the supreme court. Messrs. Sturgis and Douglass objected to the allowance of any of the items above stated as proper damages occasioned by said injunction.

The items No. 2 to 17 inclusive, on said specifications, all relate to the mortgaging, leasing, transferring, and operating the Western Vermont Railroad, and are merely different grounds or distinct items of damages claimed by the Troy & Boston Railroad Company against said Sturgis and Douglass, on account of the granting of said injunction, and must necessarily be considered together in order to come to any conclusion upon the whole matter. The Western Vermont Railroad Company, on the 10th of January, 1851, executed to Knapp and Briggs, as trustees, a mortgage of the Western Vermont Railroad, and its franchise, to secure the due payment of bonds issued by said corporation to the amount of four hundred thousand dollars, which mortgage was confirmed by a second deed from said corporation, dated the 23d of May, A. D. 1853, as set forth in the bill and answer in this suit, to which refer. After the execution of this mortgage, and before the law day had expired, the Western Vermont Railroad Company, on the 3d day of November, 1853, leased to Myron Clark said Western Vermont Railroad, with all the lands,

houses, shops, dwellings, woodhouses, and other buildings stand-
ing on said lands belonging to said railroad company, with a cer-
tain amount of rolling stock specified in said lease, with all the
tools used upon said railroad, and all the merchandise and tools
in the carpenters' and blacksmiths' shops; all tools about the
engines and cars; all the furniture in station and engine-houses
and shops, and all the lumber, wood, iron, steel, oil, and all other
personal property belonging to said Western Vermont Railroad
Company, bought for the use of said Western Vermont Railroad
and the convenient operating of the same, for the term of three
years from the said 3d day of November, 1853; under which
lease—here referred to and made a part of this report—the said
Clark took possession of said railroad and all the property men-
tioned in said lease, and was running and operating said road
under said lease when the said Knapp and Briggs, previous to and
at the December Term of this court, holden at Bennington, in
December, A. D. 1854, filed their bill in equity against the West-
ern Vermont Railroad Company, and Myron Clark and others,
to foreclose the equity of redemption on said premises mentioned
in said mortgage deed, and such proceedings were thereupon
legally and duly had, that Shepherd Knapp, of the city, county,
and State of New York, was, by order of said court, duly
appointed a receiver in said cause, of the rents, earnings, and
proceeds of said Western Vermont Railroad, thereafter to be
received and realized from the business of said road. And the
said Myron Clark, the lessee of said road and then in possession
thereof, was by said court ordered to file with the clerk of said
court, on the fifteenth day of each month thereafter, a true and
detailed statement, subscribed and verified by his oath, of all the
earnings and receipts of said company from the business of said
road during the calendar month next preceding, and the expenses
of maintaining and operating and running said road during said
period; and shall at the time of filing such statement, so far as
then received and as fast thereafter as the balance is by him
received, pay to said Shepherd Knapp the whole amount of
the net earnings, proceeds, and receipts of said road, during
the period covered by such statement, over and above the
expenses by him paid or accrued and proper to be retained, and

specified in said statement for maintaining and running said road, paying, at the time of each statement, the balance aforesaid of all the moneys received up to that time. Said bill of foreclosure and answers thereto, and all orders and decrees made in the progress of said cause, or upon its final hearing, are referred to and made a part of this report. Said Clark continued to operate said road from the time of making the order appointing said Knapp receiver to the 1st day of January, A. D. 1857, under the order of said court of chancery, made in said cause, at which time the equity of redemption was foreclosed by the operation of said decree, and the said Clark then continued to run and operate said road from the 1st day of January, A. D. 1857, to the 16th day of January, 1857, under the authority and direction of the said Knapp and Briggs. At the time said Clark took possession of said Western Vermont Railroad there was a certain amount of personal property consisting of tools, stock, and furniture belonging to the said Western Vermont Railroad Company, of which the said Clark then took possession under and by virtue of his lease, to which he added a few articles of his own and used the whole together in operating the said road. The exact amount of tools, stock, and furniture on the line of said road so taken by said Clark did not appear from any evidence before us, and there was no evidence before us as to the amount or value of the property owned by said Clark which was put on said road by him. Said Clark operated said road under and by virtue of his said lease from the Western Vermont Railroad Company from the 3d day of November, A. D. 1853, to the 4th day of Ocotber, A. D. 1854, and under the order of this court from the 4th day of October, 1854, to the 1st day of January, 1857, and from January 1st, 1857, to January 16th, 1857, under Knapp and Briggs the trustees.

On said 1st day of January, 1857, the equity of redemption was foreclosed and the title to the said Western Vermont Railroad and its franchises became absolute in Knapp and Briggs as trustees for the said bondholders. The tools, stock and furniture upon said road, taken by said Clark under his lease, and used by him on said road, was liable to constant wear, deterioration, and decay, and required to be repaired and replaced at con-

siderable expense by new articles, so far as the old were used up or worn out, in order to enable said Clark to run and operate said road.   And said Clark, during the time he operated said road under said lease and under the order of the court of chancery, expended considerable money in repairing said tools and furniture necessary for operating said road, and in lieu of such as had been used up or destroyed, and had charged in his account rendered to the receiver a sum equal in amount to the value of all the stock, tools, and furniture on hand at the time he gave up possession of said road, and in this manner accounted in part for the gross earnings of said road, by deducting therefrom said sum so charged, in order to show the net receipts of the road after deducting expenses.

The whole value of the furniture, stock, and tools left by said Clark upon said road, including what he originally received under his lease, with the additions he had made thereto, amounted to eight thousand one hundred dollars, which property afterwards went into the possession of the Troy & Boston Railroad Company in the manner hereinafter stated.   The said Clark operated said road, as before stated, under his said lease, from the 3d day of November, 1853, to the 4th day of October, 1854, and the net earnings of said road, for which he admits he is accountable by the terms of his lease, amount to the sum of twenty-six thousand two hundred and nine dollars and ninety cents, but the said Clark claims larger sums as due to him from said Western Vermont Railroad Company, and more than sufficient to pay the said sum of twenty-six thousand two hundred and nine dollars and ninety cents, on account of liabilities incurred by him for and in behalf of said railroad company; and this account between said railroad company and said Clark has never been adjusted, and we have no means of ascertaining or stating how the balance will stand as between these parties in a final adjustment of their several claims.

The said Clark retained, and is now liable to whoever may be entitled thereto for the amount of said personal property, being eight thousand one hundred dollars in money, which money was earned in the business of said road, after the order of said court appointing said Knapp receiver, but the said Clark claims that as

the said personal property, or the value thereof in money, is the property of the said Western Vermont Railroad Company, that he has large claims, and to more than the value of said personal property against said Western Vermont Railroad Company, on account of liabilities incurred by him for said company, and that he had a special lien upon such personal property while in his possession, to indemnify him against such liability, and that the Troy & Boston Railroad Company, or their lessors, took said personal property from his possession without any legal right so to do.   The accounts of said Clark, while operating said road under the order of the court of chancery, have never been adjusted, and we have no means of knowing how the balance of those accounts would stand on their final adjustment.

On the 4th day of November, 1853, George T. Hodges commenced a suit in his favor, against said Western Vermont Railroad Company, and summoned said Clark as trustee, the writ in which case was served on said day and year, and returnable to Rutland county court.   In this suit judgment was rendered at the September Term, 1854, against the principal defendants, for the sum of ten thousand one hundred and seventeen dollars and thirty-seven cents, and it is still pending as to the trustee.

The Bank of Middlebury also commenced a suit on the 3d day of November, 1853, against said Western Vermont Railroad Company, and said Clark as trustee, the writ in which suit was returnable to said Rutland county court, and was served on said trustee November 5th, 1853, in which suit judgment was rendered at the March Term (1854) of said court against said principal defendant for the sum of fifteen thousand one hundred and seventy dollars and sixty cents damages, and which is still pending as to said trustee.

The equity of redemption of the said mortgage, executed by the Western Vermont Railroad Company, having expired and been foreclosed on the 1st day of January, 1857, said Clark surrendered said Western Vermont Railroad and its franchise to Knapp and Briggs, the mortgagees in trust for the bondholders, but continued to operate said road under the direction of and for said trustees, and used all the personal property above mentioned for that purpose until the 16th day of said January, at which

Sturgis et al. *v.* Knapp et al.

date the said Knapp and Briggs executed to the Troy & Boston Railroad Company the lease set forth in the bill and answers in this case, and on the execution of this lease the Troy & Boston Railroad Company took possession of said railroad with all the buildings thereon or appurtenant thereto, together with all the stock, tools, and furniture upon said road and in the depots and warehouses thereof, which had previously been in the possession of said Clark, and had been used by him in operating said road, amounting to eight thousand and one hundred dollars. At the time said personal property was taken possession of by the Troy & Boston Railroad Company, the said Clark notified said Briggs that said personal property did not belong to said Knapp and Briggs, that it was not covered by the mortgage of the Western Vermont Railroad, and that he should hold whoever took it responsible for its value. The said Troy & Boston Railroad Company was aware at the time it took possession of said personal property that Clark claimed it, but said company did not know that fact at the time it made a contract with Knapp and Briggs to take a lease of the same, and it then understood that said property, excepting the wood, oil, and waste, amounting to about one thousand and four hundred dollars, was to pass to it by virtue of said lease. The lease of Knapp and Briggs to the Troy & Boston Railroad Company, conveyed, among other things, " all the tools, implements, and furniture belonging to said trustees, and now on or about said road, and used for operating or repairing the same." And the Troy & Boston Railroad Company claimed that all of said personal property (excepting said wood, oil, and waste, to the value of about one thousand and four hundred dollars,) belonged to said trustees, and was then on or about said road, and used for operating or repairing the same, but there was no evidence before us to show that any of said personal property was ever owned by said Knapp & Briggs, unless the same was described in and covered by said mortgage deed executed by the said Western Vermont Railroad Company to Knapp and Briggs, as trustees.

The vote of the Western Vermont Railroad Company authorizing the mortgage, empowered the president to convey to Knapp and Briggs, by way of mortgage, the road and its franchise, and Clark,

as president, on executing said mortgage, conveyed the premises mentioned in said vote, and nothing more nor less. This personal property is not included in and conveyed by the terms "road and franchise." It consisted of iron, steel, lumber, coal, and other materials used in repairs, in tools used in workshops and in repairs of road, in furniture in station-houses and cars in and about the road, and formed no part of the road and franchise.

The Troy & Boston Railroad Company took possession of the said Western Vermont Railroad, with its appurtenances, on the 16th day of January, 1857, together with all the personal property left on the line of the road by Clark, amounting to about eight thousand and one hundred dollars and above stated, and operated said road up to the 8th day of May, 1857, and used for that purpose a portion of said personal property. On the 8th day of said May, the order appointing C. M. Davey receiver in this cause took effect, and at that time said Davey took possession of said road and all its appurtenances under the order of the court aforesaid. The Troy & Boston Railroad Company, when it surrendered said road to said Davey, left on the line of the road, and in the shops and depots, all of said personal property (excepting the portion which it had used as above stated, amounting to about one thousand four hundred and eighty dollars,) but it made no delivery of the same to said Davey nor gave him a list or inventory thereof. When said Davey took possession of said road as receiver, he did not treat the said property as being covered by the order under which he acted; but he used a portion of it from necessity, in order to operate the road, until about the 1st of August, 1857. In the meantime, said Clark claimed to own or have the control of said property, and about said 1st day of August, 1857, said Clark gave said Davey permission to take possession of and use said property—said Davey paying him for the use; and thereupon said Davey took immediate possession of all said personal property which said Troy & Boston Railroad Company had left on the line of said Western Vermont Railroad, and continued to use the same in operating said road up to the 1st day of January, 1859; keeping the same in repair and adding thereto from time to time, as the necessities of the road required. When said Troy & Boston Railroad Com-

pany left said road, on the 8th day of May, 1857, they caused an inventory of all said personal property to be taken, showing the amount to be six thousand nine hundred and sixty-five dollars and eighty-seven cents, and left the same on the line of said road, where it was afterwards taken possession of by said Davey, as above stated; the said Troy & Boston Railroad Company claiming at the same time that said property was covered by their lease from Knapp and Briggs, and by the order of the court putting the road into the possession of said Davey. Said Troy & Boston Railroad Company paid for taking said inventory the sum of one hundred and twelve dollars and forty-nine cents; and the taking of this inventory became necessary in consequence of said injunction, if said personal property belonged to said Troy & Boston Railroad Company, and was put into said Davey's hands by or in consequence of said injunction and order appointing Davey receiver, and said sum so paid was a reasonable sum for taking said inventory. On the first of January, 1859, said injunction was dissolved, and said road, depots, buildings, and shops, were restored to said Troy & Boston Railroad Company, and by a subsequent order of the chancellor, said personal property which said Troy & Boston Railroad Company had left on the line of said road on the 8th day of May, 1857, which had not been used up by said Davey, together with such other property as he had added thereto during the time the same was in his possession, was delivered over by said Davey to said Troy & Boston Railroad Company, which thereupon caused an inventory of said property to be taken, for which service they paid the sum of one hundred and twelve dollars and forty-eight cents, which was a reasonable sum for the cost and expense of taking such inventory.

The value of said personal property, taken by said Davey, on the line of said road, on the 8th day of May, as above stated, was (exclusive of iron,) four thousand six hundred and twenty-five dollars and fifty-three cents.

The value of the personal property, returned by said Davey in pursuance of said order, was four thousand one hundred and twenty dollars and three cents.

When the Troy & Boston Railroad Company took possession

of said road on the 16th day of January, 1857, they had not sufficient rolling stock to operate said road to advantage, and in order to enable them to do so, they purchased twenty-five freight cars and had them painted, lettered, packed and oiled, and ready to put on said road at the time it was taken from their possession by said Davey, under said injunction order, when said cars became useless to them and they were compelled to re-sell them to the manufacturers at a loss of three hundred and five dollars and nine cents.

The Troy & Boston Railroad Company, during the period that they operated said Western Vermont Railroad, under their lease from Knapp and Briggs, from January 16th to May 8th, 1857, in consequence of deep snows and cold weather, and the failures of trips caused by high water, was prevented from earning enough from the business of said road to cover the expenses of the same, exclusive of the rent to be paid by them to Knapp and Briggs, but it was necessary to run and operate the road through the winter and spring months, in order to enable them to keep up their connections and prevent the business from being directed to other routes, and so diminishing the business during the summer and fall months, when it would be remunerative, although the expenses for said winter and spring months should exceed the income.

The said Davey operated said road, under and by virtue of said injunction and order, from said 8th day of May, 1857, to the 1st day of January, 1859, and during said period he expended considerable sums of money in renewing said road, by putting into the same new ties, and by laying down iron rails that have been re-rolled by the Troy & Boston Railroad Company for said road, as well as others which he himself caused to be re-rolled or mended, and in building new bridges, and in other repairs on said road to bad bridges and fences; but notwithstanding such renewals and repair, said road had, from natural wear and decay, depreciated in condition and value, during the time the same was so operated by said Davey, so that said road was not worth as much when it was returned by said Davey to said Troy & Boston Railroad Company, as when he received the same.

Item No. 2, in the specifications of the Troy & Boston Rail-

road Company, we have disallowed, on the ground that the expenses incurred by the railroad company, in running the road during the period therein mentioned, accrued before the injunction was granted, and therefore, could not properly be said to be sustained by said injunction ; but in fixing the damage occasioned by said company under specification No. 3, we have taken into account the fact that the use of the road is much less expensive in warm than in cold weather, and that the road was taken from the Troy & Boston Railroad Company at the time when it was becoming most profitable to them.

In support of item No. 3, in the specification of the Troy & Boston Railroad Company, they offered evidence tending to prove the value of the use of the Western Vermont Railroad to them by showing what said road had earned in the years immediately preceding the time the same was taken possession of and operated by said Davey over and above the running expenses and repairs ; and evidence tending to prove the amount of the earnings of said road during the year immediately following the time when said Davey returned the road to them, over and above the running expenses and repairs thereof, together with the opinions of witnesses who had been acquainted with the business and running of said road, and its expenses both before and after it was in said Davey's possession, as to the value of the use of said road to the Troy & Boston Railroad Company for the nineteen months and twenty-three days while the same was in said Davey's possession.

This evidence was objected to by the orators, on the ground that the same was illegal and incompetent for the purpose for which it was offered, but the objection was overruled and the evidence admitted ; and from this evidence we find that the Troy & Boston Railroad Company sustained a loss on this ground in consequence of the Western Vermont Railroad having been taken from their possession and detained by said Davey under and by virtue of said injunction and order, to the amount of eight thousand five hundred dollars, to which interest should be added.

It appeared by the evidence that was before us, that said Davey, during the time he operated said road, hired rolling stock for the purpose of operating the same, and in the progress of the trial the orators introduced and examined said Davey as a wit-

ness, and the said Troy & Boston Railroad Company, in their cross-examination of this witness, asked what sum he paid for the use of the rolling stock to operate said road.

This inquiry was objected to by the orators, on the ground that it was immaterial. The Troy & Boston Railroad Company then stated that this evidence was offered for the purpose of ascertaining whether the road was or was not profitable when in the hands of Davey. Upon this objection being insisted on by the orators, your masters rejected the evidence on the ground that it involved an inquiry into the state of said Davey's accounts as receiver, and inasmuch as those accounts, by an order of this court, are referred to another master in this cause, the same could not properly be inquired into by this board.

On the argument by counsel for the orators, it was insisted that no damages could be proved or found by this board until the accounts of said Davey, as receiver, were settled and adjusted. This ground of objection was overruled by your masters.

Item No. 4, in said specification, was not made the distinct ground of allowance of any damages, by your masters, to the Troy & Boston Railroad Company, but the difference in the rent reserved in and by said lease between the first and subsequent years was considered in our estimate of damages as stated in relation to item No. 3 in said specification.

Item No. 5 in said specification. The facts in relation to this item of claim have been previously stated, and the same has been allowed at three hundred and five dollars and nine cents, to which interest from the 1st day of January, 1859, to the first day of April, 1860, should be added.

Item No. 6 in specification. In relation to this item or ground of claim, we find that there was a depot building at Wallingford, situated upon and belonging to said Western Vermont Railroad, which was conveyed by the lease of said Knapp and Briggs of said road to said Troy & Boston Railroad Company; that at the time said Davey took possession of said road under and by virtue of said injunction and order, he took possession of and used said building as part and parcel of said road; that said building was burned by accident while in possession of said Davey as aforesaid, without any fault or negligence on the part of said Davey

or his employees. That by the terms of the lease from said Knapp and Briggs to said Troy & Boston Railroad Company, the said company are bound to return said road, depots and buildings to said Knapp and Briggs at the expiration of said lease, in as good repair as the same were in at the time they were received by said company. That said Troy & Boston Railroad Company will be compelled to re-build said depot in order to comply with the covenants contained in their lease, and that it will cost said Troy & Boston Railroad Company eight hundred dollars to re-build said depot, and place the same in as good condition as it was at the time they received the same from said Knapp and Briggs, and at the time said Davey received the same from said Troy & Boston Railroad Company. And we have thereupon allowed the expense of re-building said depot as part and parcel of the damages occasioned by said injunction at the sum of eight hundred dollars, to which interest is to be added.

Items No. 7 and 8 in specification. In relation to these two items we find that the cost and expense of taking the two inventories was as above stated, two hundred and twenty-four dollars and ninety-seven cents.

That the difference in the value of the personal property left by the Troy & Boston Railroad Company on the line of said road and afterwards, and taken by said Davey, and that returned by said Davey to said company, under the order of said court, as above stated, is five hundred and five dollars and fifty cents.

At the hearing before us the Troy & Boston Railroad Company claimed that the right or title to said property had been adjudicated by this court in the order heretofore made and above referred to, restoring said property from said Davey to said company, and that therefore the orators, by said adjudication, were estopped from proving that said personal property did not in fact belong to said Troy & Boston Railroad Company.

If, on the facts above stated, the court are of opinion that the said Troy & Boston Railroad Company are legally entitled to recover of the orators for the expense incurred in taking said inventories, and the loss occasioned by the diminution in value of the said personal property returned to them by said Davey, then we find that the damages sustained by said company by reason of

having said property taken from their possession by said injunction amounts to the sum of seven hundred and thirty dollars and forty-seven cents. To which sum the interest from January 1st, 1859, to April 1st, 1860, should be added.

Item No. 9 in specification. The cash mentioned in this item of claim was paid by the Troy & Boston Railroad Company for re-rolling iron taken from the line of said Western Vermont Railroad, by said company, during the time they operated said road under this lease, and before the same went into said Davey's possession, and this iron was re-laid upon said road by said Davey during the time he operated it. The money thus paid by the said company was paid before the injunction took effect, and the expenses thus incurred went into and made up a part of the expenses of running said road by said company before the same went into the possession of said Davey, and was by the said company included in their second item in said specification, and is disallowed by us on the same ground stated in relation to said item No. 2.

Item No. 10 in specification. In relation to this item we find that the Troy & Boston Railroad Company, during the time they were operating the Western Vermont Railroad, from the 16th of January, 1857, to the 8th of May, 1857, purchased a quantity of wood and ties on the line of said road, for the purpose of repairing both the Troy & Boston and Western Vermont Railroads, and operating the same in connection with each other. A portion of this wood was at East Bennington, at which place the Troy & Boston Railroad Company, when operating the two roads in connection, could put the wood into their tender and use it, without any other removal, but when the Western Vermont Railroad was taken out of their hands by the injunction, they were compelled to load it on cars and remove it on to the line of their own road, in order to use it in operating the same.

The extra expense of such a removal occasioned a loss to the Troy & Boston Railroad Company of four hundred dollars. The said company could have sold said wood where it lay on the line of said Western Vermont Railroad at what it cost them delivered there, but if they had done so, they would have been compelled to pay a much higher price for wood purchased and delivered on

the line of the Troy & Boston Railroad, than they could have sold this for when it was on the line of the Western Vermont Railroad ; and the Troy & Boston Railroad Company suffered less loss by removing it on to the line of their own road at an expense of four hundred dollars, than they would have suffered by being compelled to purchase an equal amount of wood on the line of their own road, to operate the same.   On these facts we find that the Troy & Boston Railroad Company sustained, in consequence of being compelled, by reason of said injunction, to remove their wood from the line of the Western Vermont Railroad, a loss of four hundred dollars, and interest thereon from January 1st, 1859, to April 1st, 1860.

The ties mentioned in this specification and intended for the Western Vermont Railroad, were put by said Davey into said road, except a small portion of them which were designed originally for another road, and which would have been removed from said Western Vermont Railroad if said injunction had not been granted, and we have therefore not allowed anything for the expense of removing them.

Item No. 11 in specification.  We do not find from the evidence before us any of the facts mentioned in this specification to be proved, and therefore disallow all claims for damages thereon.

Item No. 12 in specification.   This item of claim in specification is disallowed on the same ground stated in relation to item No. 11.

Item No. 13 in specification.   The said Davey operated said road under said injunction and order nineteen months and twenty-three days, during which time said railroad in ties, iron, and bridges depreciated by wear and decay to the amount of five thousand two hundred and sixty-eight dollars, over and above all the renewal of ties, iron, and bridges, and other repairs put upon said road by said Davey during the time he operated the same. We have, therefore, allowed the sum of five thousand two hundred and sixty-eight dollars as part of the damages occasioned to said Troy & Boston Railroad Company by reason of said injunction, with the interest thereon from the first day of January, 1859, to the first day of April, 1860.

The natural decay of the buildings on said road during said nineteen months and twenty-three days was four hundred dollars, but notwithstanding the natural decay of said buildings occasioned by mere lapse of time, said buildings would, in the ordinary course of things, be in sufficient repair at the expiration of the lease to said Troy & Boston Railroad Company for ordinary use, and said company would not, by the terms of their lease, be compelled to re-build or repair them to any great extent unless they were injured or destroyed by accident or design; but if the ordinary decay of these buildings during the time the same were occupied by said Davey, ought to be added as an item of damages sustained by said Troy & Boston Railroad Company by reason of said injunction, then we allow said sum of four hundred dollars therefor, with the interest thereon from the 1st day of January, 1859, to the 1st day of April, 1860.

Item No. 14 in specification. During the time the said Troy & Boston Railroad Company operated said Western Vermont Railroad under said lease as aforesaid, they had purchased or made contracts for a large quantity of wood to be delivered on the line of said Western Vermont Railroad for the purpose of operating the Troy & Boston Railroad in connection with said Western Vermont, which wood, while they retained control of said Western Vermont, they could draw to and use upon the said Troy & Boston road for the purpose of operating the same; but when the Western Vermont Railroad was taken from their possession by said order and injunction, they were deprived of the right to take said wood over said Western Vermont Railroad to said Troy & Boston Railroad, and were therefore compelled by necessity to permit the receiver to use the same on said Western Vermont road, he paying them the costs of the same. The right to take the wood thus contracted for and purchased by the Troy & Boston Railroad Company over the Western Vermont Railroad on to the line of their own road during the time said Western Vermont Railroad was in said Davey's possession, would have been worth to said Troy & Boston Railroad Company the sum of one thousand dollars, that is, the Troy & Boston Railroad Company could have supplied their own road with wood during said time at one thousand dollars less expense with the control of the

Sturgis et al. *v.* Knapp et al.

Western Vermont Railroad than they could when said road was under the control.and direction of the receiver.

The damages sustained by said Troy & Boston Railroad Company on this ground occasioned by said injunction, we, therefore, find to be one thousand dollars with the interest thereon from the 1st day of January, 1859, to the 1st day of April, 1860.

Item No. 15 in specification. We do not find from the evidence before us that the facts stated in this item are proved, and therefore we do not allow any damages under it.

Item No. 16 in specification. The facts in relation to this item in said specification have been heretofore stated with reference to the claim presented by Knapp and Briggs for rent. If the court are of the opinion from facts stated that said Troy & Boston Railroad Company are bound to pay said rent to said Knapp and Briggs, then we find that said railroad company have sustained damages in this respect by reason of said injunction to the amount of said rent and interest as hereinbefore stated.

Item No. 17 in specification. When the Troy & Boston Railroad Company took the lease of the Western Vermont Railroad, they had not a sufficient number of locomotives to operate both the Western Vermont and their own road to advantage, and in order to enable them to do so, they purchased an engine for that purpose, for which they paid four thousand dollars, and this engine so purchased for such purpose was not required by them to run the Troy & Boston Railroad alone, the consequence of which was that said engine remained on their hands unemployed during the time said Western Vermont road was operated by said Davey as before stated.

The Troy & Boston Railroad Company used this engine on their road occasionally, not because it was required by them for the operation of their road, but for the purpose of keeping it in order. This engine was not new when they purchased it, and they expended one thousand dollars in repairs on it before they used it. We find that the loss sustained by the Troy & Boston Railroad Company from purchasing said engine for the use of the Western Vermont Railroad, and keeping it on hand mostly idle, was equal to the interest on four thousand dollars for the time said road was run by said Davey, being nineteen months, twenty-

three days, which is three hundred and ninety-five dollars and thirty-three cents. On which sum we have allowed interest from the 1st day of January, 1859, to the 1st day of April, 1860.

We find that the Troy & Boston Railroad Company used said engine sufficiently to pay the interest on the one thousand dollars paid by them for repairs of the same, and thereupon we find that nothing should be allowed on account of said one thousand dollars.

Item No. 18 in specification. We have allowed interest on the several items of damages allowed as above stated, from January 1st, 1859, to April 1st, 1860.

We further report that previous to hearing any testimony the orators objected to any evidence of damages that were not joint as to all the defendants, but that under the order of our appointment we overruled the objection. The whole enrollment of the decree and stipulations and proceedings in this action were given in evidence before us, and are referred to, and are made a part of this report.

### RECAPITULATION.

| | | |
|---|---:|---:|
| Claim of Knapp and Briggs for rent, allowed at | $55,750 | 00 |
| Interest computed at six per cent, | 6,986 | 25 |
| | 62,736 | 25 |
| If interest is to be allowed at seven per cent. add | 1,164 | 37 |
| | 63,900 | 62 |
| If rent and interest should be allowed only from May 8, 1857, deduct | 802 | 76 |
| | 63,097 | 86 |
| Counsel fees allowed at | 500 | 00 |
| Interest on the same, | 67 | 08 |
| | 567 | 08 |
| | 63,664 | 94 |

Claim of Troy & Boston Railroad Company.

| | | |
|---|---:|---:|
| Item No. 1. If counsel fees are allowed only pending the application for injunction, the amount is | 930 | 00 |
| Interest allowed, | 106 | 98 |
| | 1,036 | 08 |

Sturgis et al. *v.* Knapp et al.

If allowed only from time injunction was granted,
 amount is........................1,604 00
Interest allowed,............ ........  89 82
                                        ————    1,693 82

If both the services are allowed,..............       $2,730 80
Item No. 2 is disallowed.
Item No. 3 allowed at... ...  .........8,500 00
Interest allowed on do... ............  637 50
                                        ————    9,137 50

Item No. 4.
Item No. 5 allowed at.................305 09
Interest,........ .................... 22 88
                                        ————    327 97
Item No. 6 allowed at................. 800 00
Interest, ............................ 60 00
                                        ————    860 00
Item No. 7 and Item No. 8 allowed at.... 730 47
Interest, .................. .......... 54 78
                                        ————    785 25
Item No. 9 disallowed.
Item No. 10 allowed at.............. . 400 00
Interest,............................. 30 00
                                        ————    430 00
Items No. 11 and 12 disallowed.
Item No. 13 allowed at...............5,268 00
Interest,...... ....... ........ . ... 495 10
                                        ————    5,763 10
If allowance is made for a decay of build-
 ings, add...... .................... 400 00
And interest,................ ... .... 30 00
                                        ————    430 00

Item No. 14 allowed at... ..... ... . 1,000 00
Interest,............................ 75 00
                                        ————    1,075 00
Item No. 15 disallowed.
Item No. 16 allowed at the same sum as to Knapp
 and Briggs.
Item No. 17 allowed at............... 395 33
Interest,.......... ........... ..... 29 65
                                        ————    424 98

All which is respectfully submitted.
                        B. H. SMALLEY,  ⎞  Special
                        L. BRAINARD,    ⎬  Masters.
                        D. STEWART.     ⎠

The orators excepted to this report, and the ground of their objections are stated with sufficient fullness in the opinion of the court.

The court of chancery, however, decreed that the orators pay to the defendants, Knapp and Briggs, trustees, as damages sustained by them in consequence of the granting of the injunction, the sum of sixty-three thousand ninety-seven dollars and eighty-six cents, being the amount allowed and reported by the masters; that the orators pay to the defendants, the Troy & Boston Railroad Company, the sum of twenty-one thousand five hundred and thirty-four dollars and sixty cents, being part of the amount allowed and reported by the masters as the damages sustained by that company from the same cause, and that each of the defendants recover their costs, and that they should respectively have execution for the damages and costs so decreed to them.

From this decree the orators appealed.

*Pierpoint Isham, Edwin Edgerton, Harmon Canfield,* and *William Tracy,* for the orators.

*Edward J. Phelps,* for the defendants, Knapp and Briggs.

*Linsley & Prout* and *Peck & Colby,* for the defendants, the Troy & Boston Railroad Company.

PIERPOINT, J. The questions in this case arose upon the report of special masters, appointed by the court of chancery to ascertain the damages sustained by the defendants in consequence of the issuing of an injunction by said court, restricting the defendants from the use and occupation of the Western Vermont Railroad.

The masters have found and reported that Knapp & Briggs have sustained damage to a specified amount, and that the Troy & Boston Company have also sustained damage to another amount, and from different causes. The Chancellor decreed the payment of these several sums to the several parties, according to such report.

It is now insisted that the decree of the Chancellor was erro-

neous, and ought to be reversed, for the reason that the damages so found to have been sustained, are several to Knapp and Briggs and the Troy & Boston Railroad Company, and in no respect joint: that the bond executed by the plaintiffs, and their surety, by order of the Chancellor, conditioned for the payment of the damages, was taken to the defendants jointly, for the security of joint damages only, and that no obligation is created thereby, on the part of the plaintiffs, to pay any damage that the said defendants may have severally sustained.

In determining this question, we will look first at the bond itself. The bond is taken as a part of the proceedings in this suit. It is made with the names of the parties complainants, and parties defendants, and in the bond reference is made to them as such. It is taken to "the said Shepherd Knapp & George Briggs, and the said Troy & Boston Railroad Company," as the defendants in said suit, and although this bond on its face, according to the well-settled rule of construction, would probably be construed to be a joint bond, still the manner in which the obligees are described, and spoken of, in the bond, in connection with the expressed purpose, for which it was taken, would seem to indicate an intention to take the bond to the defendants in the same separate character they occupied in the bill, and to indemnify them for such damages as they should in such character sustain. The bond upon its face is not *expressed* to be either a joint, or a several bond; and the rule we think is well settled at the present day, that in such case a bond will be construed to be either a joint, or a several bond, according to the interest of the parties to be affected by it; certainly in a court of equity.

Parsons, in his work on contracts, on page fifteen, in a note, where all the authorities are brought together and examined, lays down the following as the result, upon the point now under consideration: "That by express words clearly indicative of the intention, a covenant may be joint, or joint and several, to or with the covenantors, or covenantees, notwithstanding the interests are several. So they may be several, though the interests are joint. But the implication, or construction of law, where the words are ambiguous, or are left to the interpretation of law, will be, that the words have an import corresponding to the

interest, so as to be joint, when the interest is joint, and several, when the interest is several; *notwithstanding language which, under different circumstances, would give to the covenant a different effect.*"

That the interest of the defendants, in the damages that ensued in consequence of the injunction are several, is not questioned; they are not only presented as several, acted upon and reported by the master as several, but the interests they represent, and the positions they occupy in relation to the case, as it is set forth in the orator's bill, is such, that any damage that may be occasioned to them by the injunction, must necessarily be several, as a joint injury could not well accrue.    But this objection we think does not apply in this case.    The present proceedings are not based upon the bond, as is claimed by the orators.    It is true the bond provides that the damages may be ascertained by reference to a master, if the chancellor so direct, but this provision in the bond is not necessary to confer upon the chancellor the power to ascertain the damages in that way.    The statute confers the power in a certain class of cases.    The rules in chancery, which were made in pursuance of the requirements of the statute, authorize this mode of proceeding in all other cases. In the absence of all statutory provisions or rules on the subject, we apprehend the court of chancery possesses full power to make such a reference, and thus to ascertain the damages that may be occasioned by any injunction, issued by such court, when such damages are by the order of the court, to be paid by the party praying for the injunction.    The court of chancery may, in their discretion, proceed to ascertain the damages by any *other* method that they may think best adapted to the accomplishment of such object.    This we think is in accordance with the practice in this state, and in England.    It was formerly the practice in England, and perhaps is at the present time, to order the party on whose application an injunction is granted, when the court require the damages to be paid, if any are sustained, to order such party to pay a sum of money into court, out of which the damages will be paid if in the course of the subsequent proceedings the orator shall be adjudged liable therefor, but in such case before payment can be made out of such fund,

the court must proceed to ascertain the amount of the damage which the party is to pay, and order its payment. But whether the money be paid into court, or a bond taken in place thereof, either with or without security, as contemplated by our rules, the proceeding in both cases in chancery is based upon the order of the court requiring the payment of the damages, if any are sustained, as the condition upon which the injunction is issued, and without which the party praying for the injunction is not· liable for any damage that may ensue therefrom.

If the party takes the injunction he takes it subject to such condition, and if a bond is given it stands practically as a security for a compliance with the order. The obligation of the *party* is not based upon the bond alone, but upon the order of the chancellor. And when the liability of the party to pay damages is fixed, and the amount ascertained, the court will decree its payment by the party, and enforce that decree, as it enforces all other decrees under our statute. If the money is not paid, resort may be had to the bond. The proceedings in the chancery suit are of course only against the parties to it, and affect the sureties in the bond only as they fix the liability of the principal, and thus determine the amount to be recovered on the bond. This seems to be the only object to be attained by a reference to a master, either under the rule, the bond, or the general powers of the court. If the court have power to make the payment of damages a condition on which the injunction issues, and to require a bond to secure its performance, it must of necessity have the power to determine the damages, and decree payment, as between the parties to the suit, and the party who takes the injunction, takes it subject thereto, whether the authority is found in the general power of the court, or in its established rules. The insertion of a stipulation in the bond on the subject, gives no additional power to the court as between the parties to the suit. Its effect upon the sureties may be to estop them from questioning the result, when the bond is resorted to. The case of *The Livingston & Ohio R. R. Co.* v. *Applegate et al.*, 8 Dana 289, to which we have been referred by the counsel for the orators, is a case where the chancellor granted the injunction without making any order for the payment of damages, or

requiring any bond. Of course it falls within the acknowledged rule, that when there is no order, or bond, for the payment of damages, there is no obligation on the part of the orator to pay them, and it was upon this ground that the case was determined. The case of *Hall* v. *Fisher*, 20 Barbour, was a proceeding under the New York code, to effect an accounting between the parties, who were tenants in common. One claim presented for adjustment was for damages resulting from the falsely and fraudulently obtaining an injunction in a chancery suit that had formerly been instituted between the parties, and which had been terminated. It does not appear that any attempt had been made to determine the damages in the chancery proceeding. The court held that the claim was not a proper subject for adjustment in that proceeding, but that the party must resort to the bond taken on the issuing of the injunction.

In the case of *Garcie* v. *Sheldon*, 3 Barbour 232, the court seem to have taken a different view of the law of the subject, from that taken by this court. There the court held, that the court of chancery has no jurisdiction over the question of damages, either as to ascertaining its amount, or enforcing payment, as between the parties to the suit, except such as is conferred by the terms of the bond itself, and that unless the bond provides for a reference the court has no power to order one.

We think the jurisdiction of the court of chancery over the subject is found in its power to make the payment of damages the condition upon which the injunction is taken by the party, with the necessary power resulting therefrom, to enforce its order by proceeding to ascertain the damages and decree their payment by the party.

There is a wide distinction between a proceeding to enforce the order of the court upon the party to the suit, over whom it has jurisdiction, and who has availed himself of the process of the court under such order, and a proceeding in the same court to enforce the *bond* both against the principal and the *sureties*. Of the sureties the court could have no jurisdiction. To enforce the *bond as such*, proceedings must be instituted at law, upon the bond itself. The case of *Merrifield* v. *Jones*, 2 Curtis S. C., was an application to the court to enforce the payment of the damages

against the complainants *and their sureties* in the injunction bond. The court say "it is not incident to the general powers of a court of equity, to proceed against the principals, *and sureties*, on such a bond, and enforce payment of the damages secured by its condition, by a decree," and turned the party over to his action on the bond.

The case of *Bean* v. *Heath*, 12 Howard 168, was an action on an injunction bond, given upon the issuing of an injunction by the circuit court of the United States in Louisiana. The court ordered the bond to be taken conditioned "to answer all damages which the defendant might sustain in consequence of said injunction." The condition of the bond taken was to pay all such damages as the party might recover in the suit, referring to a proceeding peculiar to the state laws of Louisiana. The court held that the bond could not be enforced, as its condition was different from that required by the order, and different from that warranted by the law governing the United States courts, even though it might have been warranted by the state laws of Louisiana. The judge in giving the opinion says, a court proceeding according to the rules of equity cannot give a judgment against the *obligors in an injunction bond* when it dissolves the injunction. It merely orders the dissolution. leaving the obligee to proceed at law against the *sureties*. No question was before the court in either of those cases like the one now before us, and no principle recognized at variance with the view we have taken.

Again it is urged that the agreement entered into by the parties that the chancellor might make a decree *pro forma* in favor of the orators precludes the defendants' claim for damages, on the ground that from that time forward the injunction and the order appointing a receiver were continued under an agreement to that effect, and that such injury as resulted therefrom was caused by the agreement of the parties, and does not come within the condition of the bond or order.

The only effect of an agreement of this character is to waive a hearing before the chancellor, and allow a *pro forma* decree to be entered in favor of one party without a trial. Its sole object would seem to be to enable the parties to take the case to the supreme court by appeal, without incurring the expense and

delay necessarily attendant upon a preparation and hearing before the chancellor. Such a decree when made has the same force and effect, and the same legal and equitable consequences follow, as though made upon a hearing; its effect upon the injunction and receiver are the same; both are thereby continued, if such is the legitimate effect of such a decree, and the agreement has no operation in this respect. Agreements of this character have a tendency to facilitate the final trial of causes, and to diminish expenses, and ought not to be discouraged. As between the parties it is very clear no advantage could be taken of it, and this proceeding as we have already seen is between the parties to the suit. And we apprehend it could have no effect to discharge the sureties, certainly not unless it should be made to appear that the effect was to increase their liability, a result that can hardly be anticipated from it.

A *pro forma* decree, made for the sole purpose of being appealed from and the case thereby brought to a speedy hearing, we think cannot be regarded as such a departure from the regular proceedings in a cause as to affect the rights or liabilities of any person connected with the suit, either as principals or sureties.

It is further claimed that the decree of the chancellor was erroneous, for the reason that he decreed the payment by the orators of a much larger sum as damages than the penalty of the bond. If this proceeding was for the purpose of enforcing the bond as such, and the only obligation resting on the parties was that created by the bond, this objection would be unanswerable. But the order of the chancellor, and not the bond is the true basis of the liability of the orators, and of this proceeding. And the extent of their liability is to be determined by the character and extent of the order. What then was the order of the chancellor in this respect, on the condition of which the injunction was granted? There was no written order, and there is nothing in the case that shows definitely the extent of such order. We only know that such an order was made, from the fact that a bond was taken to secure a compliance with it. That it was not intended as a mere formal compliance with the rule of chancery, is shown by the fact that a bond for five hundred dollars would have been sufficient to answer that purpose.

Sturgis et al. *v.* Knapp et al.

It was undoubtedly the intention of the chancellor, as well as his duty, to make his order, and require a bond sufficiently comprehensive to cover all the damage the defendants might sustain, and he undoubtedly supposed he had done so, as no reason can be assigned for requiring the orators to pay a part of the damage but not all. He required a bond in the sum of thirty thousand dollars, and the majority of the court are of the opinion that the order ought not to be considered as more comprehensive than the bond; that in the absence of all direct evidence of the extent of the order, it is to be presumed that all that the chancellor intended to require as the condition of issuing the injunction was that the orators should pay the damages up to that amount and secure the performance thereof by bond, &c., and that the orators cannot be made liable under the order, for any greater sum by a proceeding of this character, than could be enforced against them by a suit on the bond itself.

Personally I should have arrived at a different conclusion, believing it to have been the duty of the chancellor, if he thought the case required an order, to make one that should cover all the damages the defendants might sustain, and believing such to have been his intention, I think the fair presumption is, that he in fact did what it was his duty and intention to do, and that no contrary inference should be drawn from the fact that he fixed the penalty of the bond at a less sum. It was necessary that some definite sum should be inserted as the penalty of the bond. The extent of the damages could not then be known; it was all conjecture, and although the chancellor undoubtedly intended to fix upon a sufficient sum, I cannot feel that in so doing he intended to limit the operation and effect of the order that the orators should pay the damages, and to fix the *maximum* of their liability. It seems to me that the condition of the bond, which is that the orators shall pay such damages as the defendants may sustain by reason of said injunction, furnishes a much better criterion by which to judge of the extent of the order, than the penalty.

This view is in strict accordance with the equity of the case. The orators having obtained the injunction on condition that they would pay the damages, there seems to me to be no just

and equitable reason why they should not pay all the damages, it having been adjudged that they were not entitled to the injunction. A majority of the court, however, think otherwise, and probably are correct in their view.

The decree of the chancellor, being erroneous in this respect, must be reversed.

I am requested by Judge POLAND to say that his view of this question is the same as my own.

The right of the defendants Knapp and Briggs, as trustees, to the rent reserved in the lease to the Troy & Boston Company during the period that the possession of the Western Vermont Railroad was withheld from the said company under the injunction of the chancellor, is not questioned, nor their right to seven per cent. interest thereon as computed by the masters. But it is urged on the part of the orators that they have no right to claim it in this proceeding as damages resulting from the injunction, for the reason that their claim upon the Troy & Boston Company for such rent, and the liability of the Troy & Boston Company to pay the same to them, were in no manner prejudiced or affected by such proceeding.

If the proceeding had been instituted, the injunction obtained, and the possession of the road taken from the company by a third party strictly speaking ; a party who had no connection with the said trustees as such, and no interest in the lease or the rents reserved therein ; it might then be said that such an interference would not affect the right of the said trustees to demand and collect the rent, or the liability of the company to pay it, but that the company must pay the stipulated rent according to the terms of the lease, and look to the party who had thus encroached upon their rights for their remedy. But we think the orators in this bill stand in no such relation to the defendants. The trustees held the road for the sole benefit of the bondholders. The equitable interest of the Western Vermont Railroad Company under the mortgage had been foreclosed, and the entire equitable interest in the road had become vested in the bondholders, and the entire legal estate was vested in Knapp and Briggs, who held it solely as trustees and for the benefit of such bondholders. When Knapp and Briggs executed the lease

Sturgis et al. *v.* Knapp et al.

of the road it was done in behalf of the bondholders, the rent reserved was to their use, and when paid was their property, for which the trustees were to account to them.

When these same bondholders, or a large part of them, in behalf of themselves and as many others as should choose to join with them, bring their bill, claiming that the trustees had no authority to execute such lease, and that the Troy & Boston Railroad Company acquired no right to the possession of the road under it, and obtained thereon an injunction divesting said company of the possession, can it be said these were the acts of strangers ? and that the liability of the company to pay rent for .the use of the property so taken from them, for the benefit of the same bondholders, is not affected thereby ? We think not most clearly. The effect of such proceedings upon the liability of the Troy & Boston Company, so far as this question is concerned, must be the same as though they had been dispossessed by the direct act or procurement of Knapp and Briggs themselves.. Such being the case the company were released from all obligation to pay the rent, and Knapp and Briggs as trustees have sustained damage to the amount thereof by reason of the injunction, and that amount, as found by the masters, with the seven per cent. interest thereon must be allowed to them, (whole amount sixty-three thousand ninety-seven dollars and sixty-two cents.)

The second item in the trustees' claim is for the amount paid counsel for resisting the granting of the injunction. This sum was paid for services that were rendered prior to the granting of the injunction, and cannot in any sense be said to result from the injunction itself. The result would have been the same if the injunction had been denied. The damages that are caused by the injunction must necessarily follow it, and cannot precede it. The damages that are caused solely by the *application* for the injunction, cannot be taken into the account in determining the amount of damages that are caused by it.

This item we think should be disallowed.

Item No. 1 in the list of claims presented by the Troy & Boston Railroad Company consist of the amount paid by the company for counsel fees in resisting the granting of the injunction, and

for defending against the proceeding on its merits; the amount paid for each is separately stated in the report of the masters. The amount paid for resisting the injunction should be disallowed for the reasons stated above. The balance of this item we think must also be disallowed for the reason that this expense was not made necessary or incurred in consequence of granting the injunction. The same defence and expenses would necessarily have been required, and incurred, if no injunction had been granted. No application was made to dissolve the injunction, and no facts are reported by the masters showing any increased expense, of this character, in consequence of it. The expense of defending the suit upon its merits cannot be regarded as damages occasioned by the injunction.

Item No. 2 we think was properly disallowed by the masters.

Item No. 3 was allowed in part. This the orators insist was erroneous. First, for the reason, that no damage to the defendants could be occasioned by the injunction after the appointment of a receiver; that when the chancellor appointed a receiver and put the road into his possession, such possession is as a matter of law, the possession of the party that in the course of the proceeding shall finally be adjudged entitled to it, and as the Troy & Boston Railroad Company have been adjudged in this case entitled to the possession of the road, the possession of the receiver is to be regarded as their possession, and they are, in law, to be treated as in the possession of the road from the beginning, and operating the road for their own benefit.

If this objection be well taken, it goes to the foundation of the whole claim for damages on the part of all the defendants. The granting of the injunction and the appointment of the receiver were so nearly at the same time as to be practically simultaneous, no appreciable injury could have intervened, and if the Troy & Boston Railroad Company have not been dispossessed, their liability to pay the rent has not been affected, or the right of the trustees to demand and collect it impaired, consequently there can be no claim for damages on the part of either.

As a general principle, it is undoubtedly true that when a receiver is appointed he is appointed for the benefit of all parties interested, and his possession will be treated as the possession of

Sturgis et al. *v.* Knapp et al.

the party entitled to the possession ; but we do not understand this rule to be absolute and without qualification, but one that is founded upon a fiction and is resorted to and enforced when it is necessary to secure the ends of justice by promoting and protecting the interests of all parties. If any benefit is to ensue to the party in the right from the mere act of possession he will be regarded as in possession ; no rights will be lost to the owner from the possession of a receiver ; whatever goes into the hands of the receiver is there for the benefit of the owner, subject to the order of the chancellor.

But we apprehend this rule has never been carried to the extent of holding that a court of chancery will, by a resort to a fiction, treat a party as in the actual possession of that which by their own injunction they have taken from him and placed in the possession of another, and that too for the sole purpose of compelling him to submit to a great and manifest injustice, especially in a case like the present where the injunction issued under an order that the orators should pay the damages resulting from it, and execute a bond with sureties in the sum of thirty thousand dollars to secure its performance, and when the injunction itself rendered the appointment of a receiver indispensable to avoid ruin to the interests of all parties. The appointment was immediately made, and if the doctrine contended for is correct, the chancellor thereby, almost in the same breath that the orders were made, entirely defeated and destroyed the effect and beneficial purposes contemplated to result from them. The authorities cited by the counsel for the orators do not carry the doctrine to the extent here claimed, and nothing but an array of authority that is irresistible would induce us to adopt a principle that we regard as so utterly at variance with the principles of equity and justice.

This view disposes of the other branch of this objection, viz : that the defendants cannot claim damages resulting from the acts of the receiver. The defendants, the Troy & Boston Company, claim damages caused by the injunction. The appointment of a receiver may have lessened and probably did lessen the damages, and it is not claimed that it, or any act of the receiver increased them.

Secondly, it is claimed that the masters erred in allowing this

34

sum, inasmuch as they were not able to find or report the amount of anything that is in the hands of the receiver as the net earnings of the road, during the period it was in his hands and operated by him. This objection also goes to the whole claim made by the defendant, inasmuch as there is nothing that appears in the case that shows that there is not now in the hands of the receiver sufficient earnings of the road to cover all that is claimed by the trustees and the Troy & Boston Company. The contrary was asserted upon the argument, but the accounts of the receiver have not been adjudicated by the chancellor, and there is nothing of which we can take notice that determines this point. If the receiver has in his hands money that he has accumulated from the earnings of the road during the period in question, that money, after the receiver's claims there are satisfied, belongs to the defendants, and, so far as it goes, lessens or extinguishes the claim of the defendants for damages. Of course, there can be no final decree as to these claims until the receiver's accounts are adjusted. But we think it is not indispensable that the receiver's accounts should be settled prior to the commencement and prosecution of a proceeding of this character, to ascertain the extent and merits of the defendant's claim for damages, especially as there is no evidence or fact reported showing that there is anything in the hands of the receiver, neither is it claimed that such is the fact, much less that there is sufficient to cover the damages that have been sustained, over the amount of the bond, and which, as we have already seen, cannot be recovered.

Thirdly. It is claimed that this item was found and allowed by the masters on inadmissible evidence. The masters admitted evidence of the income of the road during a period immediately preceding the issuing of the injunction, and also for a period immediately succeeding its dissolution, for the purpose of showing what it would have been worth to the Troy & Boston Company during the continuance of the injunction, if they had been permitted to retain it. The admission of this evidence we think was correct. The road having been taken from the claimant, proof of its income before and after would strongly tend to show what it would have been in the same hands during the intervening period. Proof of this character is not secondary ; it is circum-

Sturgis et al. *v.* Knapp et al.

stantial, and the circumstances of the case do not admit of any other. Proof of what the income was in the hands of the receiver during the period would not be conclusive. The question would still be open to precisely the same character of proof that was admitted by the masters.

The opinion of witnesses acquainted with the business of the road and the expense of operating it as to the value of its use to the Troy & Boston Company during the period it was in the receiver's hands, was also received under objection. As a general rule the opinion of a witness is not admissible, but to this rule there are many exceptions. The value of property as a general rule can be proved only by the opinion of witnesses ; so too of the value of the use of property. Its value and the value of its use often depends much upon its location, and the circumstances under which it is or may be used. The use of property may be of much greater value to one person than to another, owing to the skill or facilities for its use possessed by the one that the other has not. To determine the value of the use of a piece of property to a particular person under the circumstances of a given case, often requires the exercise of much skill and judgment that can be acquired only by experience and familiarity with the subject matter, such as ordinary triers may not and probably would not possess. In such a case the opinion of witnesses, competent to form such opinion, would be absolutely necessary to lead the triers to a just result. ROYCE, J., in *Clifford* v. *Richardson*, 18 Vt. 620, says, " It often happens that the triers are not qualified from experience in the ordinary affairs of life, duly to appreciate all the material facts when proved. Under these circumstances the opinion of witnesses must of necessity be received. It is true that except in cases involving an estimate of the value of property, *or of its use*, the instances of admitting such evidence on the latter ground are said to be limited to matters of professional science, art or skill. But this restriction has not usually been applied in a rigid and narrow sense ;" and he then quotes from STARKIE the following: " In general when the inference is one of skill and judgment, the opinion of experienced persons is admissible ; for by such means only can the jury be enabled to form a correct conclusion. This evidence, we think,

not only comes within the above exception, as relating to the value of the use of the property, but is clearly within the scope and spirit of the rule itself.

It is further urged that the masters, in determining the amount to be allowed under claim No. 3, have taken into consideration the claims specified as No. 2, 4 and 9, although they disallowed those items, and that so far as the amount allowed under No. 3 has been increased thereby, it is erroneous. If the report of the masters sustains this position there is certainly force in it. But we think such is not the fair inference to be drawn from the report. The masters say they disallowed No. 2 for reasons that we think are satisfactory. But they say that in fixing the damages under claim No. 3, they took into consideration the fact that the use of the road is much less expensive in warm than in cold weather, and that the road was taken from the Troy & Boston Company at the time when it was becoming most profitable to them. When the fact is established that it is more profitable operating this road in warm weather than in cold, it is evident that the masters could not properly determine the damages sustained by the company for the period specified, without looking at the relative proportions of the cold and warm weather during that period, as the damage would necessarily be less if they were kept out of the possession of the road two winters and one summer, than it would be if they were kept out two summers and one winter. And all the masters did in connection with this subject was to look at it in this light, and in so doing they were clearly right. No. 9 was disallowed absolutely by the masters for the reasons stated in reference to No. 2. No. 4 was also disallowed, but the masters say that in determining the damages in relation to No. 3, they had reference to the difference in the rent reserved in the lease for the first year, and that for the subsequent years. As the road was taken from the Troy & Boston Company during the first year of the lease, and the masters were ascertaining the damages over the amount of the rent, they must necessarily have acted with reference to the rent reserved during the whole period.

Again it is said that if the Troy & Boston Company have sustained damage, it was the result of their own fault in not enter-

ing into an arrangement with the receiver for the running of
the Western Vermont road in connection with the Troy & Bos-
ton, as they had formerly done with Clark when he was run-
ning the Western Vermont. We think the report of the masters
does not support this position. The parties did not agree, it is
true, but the masters found that it was no more the fault of the
Troy & Boston Company than of the receiver. The substance
of the report on this subject is that each party was willing to
enter into an arrangement if he could make one satisfactory to
himself, otherwise not; but neither succeeded in persuading the
other to enter into such an one. Of course their negotiations
failed, and no arrangement was entered into. On the whole we
see no sufficient reason for interfering with the report of the mas-
ters as to this item.

No. 5 is a claim for the loss sustained on the sale of cars
purchased to be used on the Western Vermont Railroad, and sold
after the injunction. After the injunction the Troy & Boston
Company had no use for this property, and must either sell it or
keep it on hand subject to depreciation, loss of interest and stor-
age, to await the delay and uncertainty of the termination of the
controversy. To sell the property was undoubtedly the best
course. And this case does not come within the rule, applicable
to cases where there has been a sale of property and a refusal on
the part of the vendee to take and pay for it, which requires
notice of a re-sale in order to make the vendee liable for the
difference. Here the orators had no interest in the cars and
were under no obligation to take them at any price, and they are
not now sought to be made chargeable for any violation of con-
tract or neglect of any duty relating to such property. The Troy
& Boston Company have sustained damage from the purchase
and sale of this property, and as there is no pretense that the
company was guilty of any improper conduct or neglect in the
purchase or sale of this property, and its sale was rendered
necessary in consequence of the injunction, it would seem that
the orators should be responsible for such damages as fairly
result from it. And the fact that the company stated the sum in
their specification less than the masters found it to be, furnishes
no reason for our changing it; that fact, doubtless, had its due

weight with the masters, but after all, if the party satisfied the masters that he was justly entitled to more than he stated his claim to be, it was the duty of the masters to allow it.

No. 6. This claim, we think, should be disallowed. The loss of the station house by fire is a loss that might as well have occurred in the hands of the Troy & Boston Company as in that of the receiver, and is an injury that property of this description is always subject to in the hands of any party, and in the absence of anything to fix neglect upon the receiver or his agent, or in fact on any person, this injury cannot be said to result from the injunction.

No. 7 is for the cost and expense of taking the inventory at the time the personal property was surrendered to the receiver, and also for the same when it was returned by the receiver. The Troy & Boston Company took the personal property under the lease, and claimed that it was transferred to them by the lease, and covered by the order of the court putting the road into the hands of the receiver, they accordingly left the property on the road, taking an inventory of it, and it was taken by the receiver, and used upon the road. After the injunction was dissolved and the road restored to the Troy & Boston Company, the receiver, under the order of the chancellor also returned the personal property on to the road from whence he took it. Independently of any question as to the title of this property, there can be no question that it was necessary on each of said transfers that an inventory and valuation of the property should be made to secure the rights of all parties and avoid controversy. This necessity was caused by the injunction. The property was in the possession of the Troy & Boston Company. It did not belong to them. Whether it belonged to the trustees, and was covered by their lease, or to other parties, was a question; as they understood it they had the right to it under the lease, and surrendered it under the order, but in either event as they in good faith gave it up and did no more than to take a necessary precaution to protect themselves and the owner, we think they should be allowed for the expense and cost of so doing, both when they gave it up, and took it back. And this too without reference to the question as to who shall ultimately be adjudged

the owner, and the party to whom they should account for it.

No. 8 is a claim for the depreciation of the value of such personal property from the time it was given up until it was returned by the receiver. This claim we think should be disallowed. There is nothing in the report that shows the cause of such depreciation. It may have been from mere lapse of time. It may have been the same in the hands of the Troy & Boston Company. There is certainly nothing in the report to show that it was the necessary result of the injunction. The report does show that it was kept in repair by the receiver, and no fault in respect to it is charged upon him.

No. 10. Expense of removing wood from the line of the Western Vermont Road, that the Troy & Boston Company had placed there to be used upon the Troy & Boston Road. The masters had found that the company sustained damage in this respect to the amount of four hundred dollars, in consequence of the injunction ; that the company had to expend this sum to get the wood on to their road so as to avail themselves of it, for the purpose for which it was purchased, more than it would have cost them, if they had retained possession of the Western Vermont Road. Upon the facts reported and the finding of the masters thereon we think this sum should be allowed.

No. 14 stands upon much the same grounds as No. 10, and we think should be allowed at the sum reported by the masters for the same reason. These sums, in fact, constitute a part of the estimated net income of the road, and might have been considered in that connection.

Nos. 11 and 12 were disallowed by the masters for want of sufficient proof.

No. 13. Of this claim the masters have allowed the sum of five thousand two hundred and sixty-eight dollars as caused by the injunction from the wear and decay of the iron, ties and bridges during the period it was in the hands of the receiver, and over the repairs made by him. It is apparent from the language of the report, that the masters found this depreciation or want of repair to be of such a character that the Troy & Boston Company would be compelled to remedy the difficulty by bringing the

road up to its condition when taken from them, in order to safely operate the road, or to return it at the end of the time in the condition required by the terms of the lease.    Or in other words they found that the road required repairs to such an amount to put it in good permanent operating order, and in as good condition as it was when taken from the company.  These repairs were of that kind that it was necessary to make continually, as the road was being operated, to keep it for a length of time in good and safer unning order.    That such was the character of the damage allowed by the masters is shown by the fact that they disallowed, and we think properly, all claim for that natural wear and decay that would not render the property unfit or unsafe for its ordinary use during the existence of the lease, or reduce it to such a condition that the party would not be justified in returning it at the expiration of it.    The masters evidently regarded this sum as one that should have been expended upon the road during the period, as a part of its ordinary running expenses, to be deducted from the proceeds in order to ascertain the net earnings.

This we think is the fair construction to be put upon the report.   Upon no other ground could the masters have found that the Troy & Boston Company had thereby sustained damages to this amount, by reason of the injunction.

This sum we think should be allowed as found by the masters.

No. 15  was disallowed by the masters for want of proof.

No. 16  is disposed of by allowing it to the trustees.

No. 17  is for loss sustained by the company in consequence of the purchase of an engine for the use of the Western Vermont Railroad, but which after the injunction they had no use for, until after the injunction was dissolved.   The masters have found that the company sustained damage from this cause to the amount of three hundred and ninety-five dollars and thirty-three cents.

From the facts reported we think the masters were justified in so finding, and that the same ought to be allowed.

The result is that the trustees Knapp and Briggs are allowed damages, sustained in consequence of the injunction, to the amount of $63,097 86.

Sturgis et al. *v.* Knapp et al.

The Troy & Boston Company are allowed damages as follows:

On Item No.   3,. ......................... $9,137 50
"      "     No.   5,........................... 327 97
"      "     No.   7,........................... 224 97
"      "     No. 10,......... ............... 430 00
"      "     No. 13,.............. .. .......... 5,763 10
"      "     No. 14,........................... 1,075 00
"      "     No. 17,......................... 424 98
                                              —————
                                          $17,383 52

These several items include interest to the first of April, 1860.

The above allowances are subject to the result of the settlement of the accounts of the receiver, and may be affected thereby.

The decree of the chancellor is reversed and the case remanded with direction that the chancellor proceed to ascertain the amount in the hands of the receiver, if any thing, that is properly applicable to the extinguishment of the defendants' claims, and to have the application made, and then by decree to carry into effect the principles and conclusions herein before enunciated.

The view taken of the case naturally suggests several questions as to the manner in which the sum for which the orators are adjudged liable shall be apportioned between the claimants, and also as to the disposition that shall be made of any amount that may be decreed to the trustees, as between those bondholders that have instituted, aided or favored this suit, and those that have sustained the trustees in the course which they took in the matter, &c. These questions have been alluded to, but were not fully discussed in the argument, and it is not necessary to pass upon them here. They will be duly considered by the chancellor in his final decree.