Sturges et al. *v.* Knapp et al.

JONATHAN STURGES AND THOMAS DOUGLASS *v.* SHEPHERD KNAPP, GEORGE BRIGGS AND THE TROY AND BOSTON RAILROAD COMPANY.

[IN CHANCERY.]

*Interest. Injunction. Damages. Trustees. Bondholders. Lessor and Lessee.*

Where a mandate of the supreme court directed the court of chancery to make a decree that the orators should pay to the defendants a specified sum as injunction damages, but directed nothing in respect to the interest on the same, and the court of chancery made a decree granting interest from the date of the decree, it was *held,* that the decree was in this respect in accordance with the mandate, the orators not being in fault for not paying the damages until the decree was made and therefore not liable for interest prior thereto.

And the defendants having appealed from the decision of the court in refusing to decree interest prior to the date of decree, the orators will not be liable to pay interest while the cause is in the supreme court on the appeal, but only from the time it is remanded to the court of chancery.

But they will be bound to pay interest from that time, even if the cause is delayed upon other points.

K. and B. as trustees of the bondholders of a railroad, after foreclosure made a lease thereof to another railroad company. The orators who owned one quarter and represented a majority of the bonds, brought a bill for themselves and all other bondholders who should choose to come in and prosecute, against K. and B. and the lessees, to set aside the lease; and an injunction was granted against the use and occupation of the road by the lessees, the court, however, first requiring a bond in the penal sum of $30,000 to be filed by the orators to pay to the defendants such damages as they should sustain from the injunction, if it should be decided to have been improperly granted. The bill was dismissed, and the mandate to the court of chancery ordered the damages to K. and B. to be assessed at $63,097.86, and to the lessees at $17,383.52, and that the funds in the hands of a receiver, who had been appointed to take charge of the road pending the suit, should be applied in payment of these damages so far as they went, and that the orators should pay the remainder not exceeding the $30.000, and the mandate provided that the apportionment of this sum between the defendants should be considered in the final decree. It turned out that there were no funds in the hands of the receiver. *Held,* that, the trustees in defending the suit must be regarded as acting for and in behalf of all the bondholds who did not assent to, or aid the orators in its prosecution, and no others.

The act of the orators in causing the damages was not the act of all the bond-holders.

The purpose for which the bond was ordered and given must control in its appropriation and apportionment rather than any supposed superior equity set up by the lessees.

There should therefore be a *pro rata* distribution among those entitled to damages according to the amount of damages each has sustained

And as the damages assessed to the trustees were solely for the rent they would have received as representatives of all the bondholders, but for the injunction, the true rule of apportionment is a *pro rata* distribution upon the sum assessed to the lessees on the one hand, and the share of the rent assessed to the trustees on the other hand, which would have belonged to and been received by the innocent bondholders who did not participate in the prosecution of the suit on the part of the orators, had no injunction been granted.

BILL IN CHANCERY. In January 1857, the trustees of the Western Vermont Railroad, who acquired an absolute title under decree of foreclosure expired, made a lease of the road to the Troy and Boston Railroad Company, for the term of ten years. A majority of the bond holders under that mortgage were dissatisfied with the lease, and desired to have it set aside, as they were advised it was illegal. For this purpose after various meetings and correspondence had taken place, they appointed Jonathan Sturges, Thomas Douglass, and James L. Stark, a committee to institute proceedings to invalidate the lease, and to obtain an injunction against any further occupation under it. The committee accordingly brought the present bill in chancery for that purpose in May, 1857, against the trustees and the Troy and Boston Railroad Company, and on application to Chancellor Kittredge, and a hearing of the parties, an injunction was granted, restraining the defendants from possession of the road, and placing it in the hands of C. M. Davey, as receiver. And in pursuance of the further order of the court, the orator, Sturges, executed a bond with surety in the sum of thirty thousand dollars, as an indemnity to the defendants against damages sustained by the injunction, if it should ultimately be held to have been improperly granted.

A decree in this cause for the orators, setting aside the lease,

was made in December, 1857, from which the defendants appealed to the supreme court. In November, 1858, the judgment of that court was delivered, reversing the decree of the chancellor, holding the lease in all respects valid, and remanding the cause to the court of chancery with directions that the orator's bill be dismissed with costs. *See the case as reported,* 31 Vt. 1.

In December, 1858, in the court of chancery, the receiver was discharged, the injunction dissolved, and the lessees permitted to resume possession of the road. And a reference to special masters was ordered, to ascertain and report the damages sustained by the defendants, in consequence of the injunction. After a protracted hearing, the masters made their report in December, 1859, awarding damages to both the parties defendant, to an amount considerably exceeding the penalty of the bond. The amount allowed the trustees being $63,098.86, and that allowed the Troy and Boston R. R. Company being $17,383.52. The damages allowed the trustees, however. being for the entire loss of rent sustained by the injunction, and estimated on the basis of all the bondholders being entitled to participate. A *pro forma* decree having been made on this report, an appeal was taken by the orators to the supreme court. That court rendered judgment substantially affirming the allowance of damages, but holding that no recovery could be had of the orators beyond the amount of their bond, for which amount they held the orators liable in that suit, and that any money in the receiver's hands should be applied toward the payment of the remaining damages; and reserving all questions as to the apportionment of the damages between the defendants. *See the case as reported,* 33 Vt. 486.

The cause having been remanded to the court of chancery for further proceedings, questions arose as to the period for which interest should be allowed on the bond, and as to the proportion in which the damages recovered should be divided between the two parties defendant, the trustees and the Troy and Boston R. R. Company, it appearing upon a reference to settle the receiver's accounts that there was no money in his hands, and the amount of the bond ($30,000.), and the interest thereon constituting the only fund for payment of the damages.

It was claimed by the Troy and Boston R. R. Company that their entire damages as allowed, should first be paid out of the fund, in priority to the claim of the trustees. The trustees contended that the fund should be divided between the defendants, *pro rata*, in proportion to the amount of their respective damages.

The defendants claimed interest from the date of the dissolution of the injunction. The orators resisted the allowance of any interest whatever on the bond.

The court (KELLOGG, CHANCELLOR), made *pro forma* decree, that the amount of the injunction bond should be divided *pro rata*, between the defendants, upon the entire damages recovered ; and that interest should be allowed on the amount of the bond from the date of the decree.

From this decree both the defendants appealed.

*Linsley and Prout* and *Peck & Colby*, for the Troy and Boston R. R. Company.

*E. J. Phelps*, for Knapp and Briggs, trustees.

*Pierpoint Isham, E. Edgerton* and *H. Canfield*, for the orators.

PECK, J.   Whatever decisions were made in this cause directly between the orators and the defendants when the case was before this court at a former term, must be regarded as the law of the case so far as their relative rights are concerned.   It was there decided that the amount of damages which the orators were bound to pay to the defendants was limited by the amount of the injunction bond, notwithstanding the court at the same time assessed the damages that the defendants had sustained by reason of the injunction at a much greater sum.   The penalty of the injunction bond is $30,000. the amount of damages assessed to Knapp and Briggs is $63,097.86, and the amount of damages assessed to the Troy and Boston R. R. Company, is $17,383.52.   This all appears from the report of the case, 33 Vt. 486, where the history of the case is so fully set forth as to supercede the necessity of any further statement of it.   The mandate then sent to the court of chancery accords with the

opinion of the court as there reported.    The mandate is as follows :

"The decree of the chancellor reversed—damages of Knapp and Briggs to be assessed at $63,097.86.    Damages of the Troy and Boston R. R. Company, to be assessed at $17,383.52, both with interest from the date of the masters report.    Receiver's account to be settled and the amount in his hands, if any, to be applied in payment of damages—decree against the orators for the remainder of the damages not exceeding $30,000. the penalty of the injunction bond."    The matter of the receiver's account is now of no importance, as it appears that that account has been taken and nothing is found in his hands.    The mandate further provides that, "all questions relative to the apportionment of the amount of the decree upon the respective claims of the defendants, and of the amount allowed the trustees as between the bond holders, &c., to be considered in the final decree."

The only question made on this appeal as between the orators and the defendants is as to interest on the $30,000.    It appears from the decree that the defendants claimed interest from the dissolution of the injunction.    The court of chancery on the 31st of July, 1861, after the foregoing decision of the supreme court, decreed that the bill be dismissed with costs, and "that the defendants recover of the orators the sum of $30,000. with interest from the date of the decree.

On this hearing the defendants claim interest on the $30,000. from the date of the decision or mandate of the supreme court fixing the amount of the liability of the orators.    It is true that that decision fixed the amount which the court of chancery was directed to decree the orators to pay, but it was not a final decree, it remained for the court of chancery to carry out the mandate by entering a decree in pursuance of it, and the orators were not in fault in not paying until such final decree was made by the court of chancery, and therefore not liable for interest prior to the making of such decree.    The mandate not having ordered any interest to be computed in the meantime on the $30,000., the decree of the court of chancery was in this respect in accordance with the mandate and must be affirmed.    But

whether the orators should not in carrying out this decision be decreed to pay interest on the $30,000. from the 31st of July, 1861, the date of the decree from which this appeal was taken, is not so clear. If the defendants had rested satisfied with this decree and the orators had appealed, it would be just that the orators should pay such interest; but it appears that the orators were satisfied with that decree, and the defendants appealed not only from that part of the decree relating to the apportionment, but also as to the refusal of the court to decree interest prior to the date of their decree. · Had the defendants only appealed from that part of the decree relating to the apportionment of the damages between them, the orators would have been liable to interest according to that decree from July 31st, 1861, as in that case they might have paid the money into court and left the defendants to litigate the question of apportionment, in which the orators have no interest. But as the payment has been prevented by the act of the defendants in appealing from this part of the decree in which they have not succeeded, the orators are not in fault in not paying according to that decree while this cause is in this court on that appeal. They are liable to pay interest on the $30,000. after the cause reaches the court of chancery and no further. They are liable to such interest for the reason that when the cause comes back to the court of chancery the amount will have become fixed which they are bound to pay, and if the cause is delayed to ascertain the necessary facts to make the apportionment, the orators can pay the money into court.

The remaining questions are solely between the two defendants, Knapp and Briggs of the one part, and the Troy and Boston R. R. Co. of the other part, relating to the apportionment, that is, as to what portion of the $30,000. each shall recover. This question is expressly left open by the former mandate, and is not concluded by the former decisions in the cause.

The court of chancery assessed the damages as directed by the mandate, and apportioned the $30,000. between the defendants Knapp and Briggs of the one part, and the Troy and Boston R. R. Co. of the other part, *pro rata*, according to the amount of damages assessed to the defendants respectively. From this

apportionment the Troy and Boston R. R. Co. appealed. The Troy and Boston R. R. Co. insist that their full damages should be first satisfied out of the sum the orators are decreed to pay, before the trustees can have any portion of it—that is, that they should recover and hold to their use the whole amount of their damages, and the trustees have the residue, and this by reason of a supposed superior equity, notwithstanding the damages sustained by the trustees is much greater than theirs. The application of this principle would have excluded the trustees entirely from the recovery of any damages, had the damages sustained by the Troy and Boston R. R. Co. been equal to or more than the amount the orators are decreed to pay. This upon the face of it would appear to be an unreasonable and unjust appropriation of a security taken for the common benefit of both. Treating both defendants as recovering in their own right and for their own benefit, and not looking to the representative character of the trustees or to the relation of the defendants to each other, except as defendants in the suit, it is obvious that the common principle that equality is equity, would apply, and that the distribution should be made according to the decree of the chancellor, *pro rata*, according to the amount of damages sustained by each in consequence of the injunction. But in determining the rights of these parties we are at liberty to look fully into the relations of the defendants to each other, and the grounds on which their claim or right to recover of the orators rests. The claim of the trustees to recover damages and to a portion of this fund, is solely in trust for the benefit of the bondholders under the mortgage, and it appears that the damages assessed to them was solely for the rent they were entitled to and would have recovered but for this injunction, which rent the lessees, the Troy and Boston R. R. Co., were by a decision already made in this cause relieved from all obligation to pay by reason of the railroad having been taken out of their possession by means of the injunction. It is claimed by the counsel for the Boston and Troy R. R. Co. that as the orators are a portion of the bondholders under the mortgage, and as the trustees' claim is only in the right and for the use of the bondholders under the mortgage, for

purposes of this question the court are to treat all the bond-
holders as lessors, and perhaps this is the light in which the
case should be regarded. But assuming this to be so, what is
the consequence? The Troy and Boston R. R. Co. claim that it
follows that as some of the bondholders procured this injunction,
and thereby caused the damages, the act of the orators in
causing the damages is the act of all the bondholders; that the
fault of those bondholders in this respect who brought and pro-
secuted the bill, is to be imputed to all the bondholders, although
done against the will of the others and of the trustees, and
that to allow any of the bondholders to recover damages or par-
ticipate in this fund, is to allow them to appropriate to the
prejudice of the Troy and Boston R. R. Co. a portion of this fund
to compensate them for damages occasioned by their own act.
This is true as applicable to those bondholders who participated
in prosecuting the suit, but is it true as to the innocent bond-
holders who not only did not assent to the prosecution of the
suit, but aided in its denfence? The trustees in defending the
suit must must be regarded as acting for and in behalf of all
such bondholders as did not assent to or aid the orators in its
prosecution. It is claimed that this question was virtually
decided in this case when the supreme court decided that a
portion of the bondholders having deprived the lessees of the use
of the road by means of the injunction, the lessees were thereby
relieved from their obligation to pay rent.

It is true that if the lessor ousts the lessee during his term,
he thereby discharges the lessee from rent, and where there are
two or more joint lessors, and one ousts the lessee even against
the will of the other lessors, the same result follows. The act
of one lessor is for this purpose the act of all. This is because
the contract is entire and the rent not divisible, and therefore in
such case the lessee is not bound to pay for what the lessor has
not suffered him to enjoy. The court very properly decided in
in this case that the lessees were not liable for the rent while
they were thus deprived of all use of the road.

The proposition that the act of one tenant in common is the
act of all is true where properly applied, but not true for every

purpose, if so, one tenant in common could never recover of his co-tenant for a wrongful act done to the common property ; yet it is clear that such actions for damages may be maintained, and it is upon this principle that the trustees in behalf of the innocent bondholders are allowed in this case to recover damages of the orators. The principle that the act of one joint tenant or tenant in common is the act of all and to be imputed to all, is not applicable to the extent and for the purpose the counsel claim.

The trustees had a right on the granting of the injunction to have an order for the payment of damages and a bond to secure those damages ; and the Troy and Boston R. R. Company had the same right as to their damages. The court might have made separate orders in favor of each and ordered a separate bond to each, or they might, as they did, order one bond to all the defendants conditioned for the payment of such damages as they might sustain.

In order to the correct decision of this question we must look to the purpose for which this bond was ordered and given and for whose benefit. The purpose was as much to secure the damages that the innocent bondholders might sustain, as to secure the Troy and Boston R. R. Company, and such is its import. This consideration must control its appropriation or apportionment, rather than any supposed superior equity set up by the Troy and Boston R. R. Company. Suppose each of two creditors has a several caim against the same debtor, both legal and valid debts, and the debtor executes a mortgage or other security to the creditors jointly, to secure them, and it turns out insufficient to secure both debts, could one creditor appropriate the whole security to his debt to the exclusion of the other, on the ground that his debt is the more equitable? Or suppose the orators without power, had wrongfully ousted the Troy and Boston R. R. Company and each of these defendants had in separate suits recovered a judgment for damages for such ouster, and on filing a bill to enjoin the judgments, a bond like this had been ordered and filed, could the Troy and Boston R. R. Company set up this superior equity to prevent a *pro rata* distribution of

the proceeds of the bond?    Clearly not.    There can be no difference in this respect between a bond taken to secure damages already recovered, and one taken to secure damages that may be recovered thereafter.

There is a further consideration in favor of a *pro rata* distribution.    Those bondholders who had no agency in procuring the injunction or prosecuting the suit, have not only in fact had no agency in causing the damages, but have done all in their power, at least by their trustees if not personally, to defend the suit and protect the lessees in the enjoyment of their rights under the lease ; so that the damages to be recovered are the fruits of the joint efforts and expense of all the defendants.    These considerations in our view outweigh any constructive wrong sought to be imputed to these innocent bondholders by reason of their belonging to a class of creditors some of whom have commenced and prosecuted the suit.

But it is claimed that a *pro rata* distribution without first allowing the lessees to satisfy their damages out of the fund, is compelling the lessees to contribute towards paying the rent from the payment of which the court have already decided they are released by the act of the orators.    But to say that a *pro rata* distribution of the bond is compelling the lessees to contribute, is assuming that the bond is the sole property of the lessees, or at least that they have a prior right to it, to the extent of the damages by them sustained, which is the very question in dispute. The bond having been ordered and taken to secure the trustees as well as the other defendant, is the common property of both, and the damages recovered being obtained by means of the joint efforts and at the joint expense of both, a *pro rata* distribution of the fund, among those who are entitled to damages, according to the amount of damages each has sustained, is the just and equitable rule.    The Troy and Boston R. R. Company has no right of priority.

It is claimed further by the counsel of the Troy and Boston R. R. Company, that if a *pro rata* distribution of the fund is to be made, the rule of apportionment adopted by the chancellor is

Sturges et al. *v.* Knapp et al.

wrong, giving too great a proportion to the trustees. In this we think the counsel are right. The argument on this point is unanswerable.

The amount the orators are decreed to pay being less than the amount of damages sustained by the defendants as assessed, and neither being entitled to priority, the distribution should be such as to give to each the same *per cent* on the damages each has sustained by the injunction, that is, to each one who is entitled to compensation or to participate at all in the fund, or in other words, to recover damages of the orators.

On looking into the previous proceedings in the cause, it appears that the $63,097.86 assessed to the trustees is just the amount of the rent that the trustees were deprived of by the injunction, and which, but for the injunction they would have received, and that this forms the basis of their damages. To make a distribution, giving each in proportion to his loss, it is necessary to ascertain who has sustained the damages the orators are decreed to pay, and the relative amount each has sustained. The defendants, Knapp and Briggs, personally have sustained no damages, as they stand in the case in a representative capacity, and it is necessary to see whom they represent in this recovery, and in whose behalf they are to receive their distributive share of the fund. Had there been no forclosure, the interest of the mortgagor, the Western Vermont R. R. Company, would be necessary to be considered; but this rent which forms the basis of these damages to the trustees having accrued after the foreclosure, the railroad company must be laid out of the case, they having no interest, and having sustained no damage. The trustees in this matter represent only the bondholders. The decree of the chancellor is upon the theory that they represent the whole bondholders in this recovery, and in this consists the error. The purpose for which the order was made and the bond given, must still be kept in view. It was not to indemnify the orators or the bondholders who prosecuted the suit and procured the injunction, and thereby caused the damages, but to secure the innocent bondholders who did not participate in the prosecution of the suit, and the Troy and Boston R. R. Company.

It would be absurd to suppose the chancellor ordered the orators to give a bond to indemnify themselves against their own voluntary act. The orators, therefore, are not entitled to receive any portion of the damages, or participate in the distribution ; the trustees do not represent them in the recovery. . If the orators are allowed to share in the damages recovered, they in effect do not pay the $30,000. they are decreed to pay, but so much less as the amount they receive back in the ultimate distribution by the trustees among the bondholders, while the innocent bondholders may not obtain full compensation, and the Troy and Boston R. R. Company certainly do not, for the damages the orators have caused them. If any of the bondholders participated in the prosecution of the suit in behalf of the orators, they stand in the same condition in this respect as the orators. . The trustees therefore, in the. recovery of these damages recover in behalf of the innocent bondholders only, and whatever they receive under this distribution after paying expenses, must be ultimately distributed among the innocent bondholders. · We have already seen that the damage assessed to the trustees was solely for the loss of the rent they would have received but for the injunction, and of which they were thereby deprived. It follows then that the loss of the innocent bondholders is only the proportion of that rent which they would have received (had there been no injunction), on a *pro rata* distribution among all the bond holders including the orators. It is clear therefore that the decree by taking this whole rent as the basis on the side of the trustees of the apportionment between them and the Troy and Boston R. R. Company, gives to the trustees who recover solely for the use of the innocent bondholders, a greater proportion or *per cent.* of their loss, than the Troy and Boston R. R. Company receives of theirs. The relative amount of. the bonds held by the innocent bondholders may be so small compared with the whole amount of the bonds outstanding under the mortgage, that they will under this decree receive more than their whole loss, while the other defendant receives but a partial compensation. This is manifestly unjust and inequitable.

The true rule of apportionment is a *pro rata* distribution upon the sum assessed to the Troy and Boston R. R. Company on the one hand, and the share of the rent assessed to the trustees on the other hand which would have belonged to and been received by the innocent bondholders who did not participate in the prosecution of the suit on the part of the orators, had no injunction been granted. These sums indicate what each, entitled to participate in the fund, has lost by reason of the injunction. It is claimed by the counsel of the trustees that the Troy and Boston R. R. Company has no right to inquire what distribution the trustees are hereafter to make of their share of the fund. This is true after it is ascertained what their share is; but it is also true that in ascertaining what that share is, the court have a right to look behind the nominal parties and see whom they represent, and what the relations of the real parties are to each other and to the fund in question, and enquire into such other facts as have a bearing upon the question of distribution.

It is also insisted by the counsel of the trustees that the former decision of the supreme court is conclusive in favor of the decree of the court of chancery, upon the question of distribution, so that the court can not look behind the nominal parties. But it appears by that decision that the supreme court only decided as between the orators and defendants, and fixed the sum that the orators should pay the defendants, and expressly left this question of apportionment between the Troy and Boston R. R. Company and the trustees, and also the question of distribution of the share of the trustees between the several bondholders, open for adjudication. This appears from the case as reported and from the mandate sent to the court of chancery.

The decree of the court of chancery as to the apportionment is erroneous and must be modified according to the views already expressed. In other respects we find no error.

Decree reversed and cause remanded.