TOBEY FURNITURE Co. *v.* COLBY *et al.*

(*Circuit Court, N. D. Illinois.*   February 20, 1888.)

1. PATENTS FOR INVENTIONS—INJUNCTION—GRANTING ON FINAL HEARING—REQUIRING BOND.
    In a suit to restrain defendants from infringing plaintiff's patent, an injunction was issued on notice to defendants, after a full hearing on the question of infringement, on condition that plaintiff file a bond to indemnify defendants for any damages they might sustain.  On final hearing the bill was dismissed for want of equity.   *Held,* that plaintiff was liable on the bond.

2. SAME—MEASURE OF DAMAGES—DEPRECIATION IN VALUE OF ARTICLE.
    Plaintiff obtained an injunction against defendants. restraining them from making or selling a folding-bed, on the ground that it infringed plaintiff's patent.  On final hearing the bill was dismissed for want of equity, and defendants filed a suggestion of damages.   It appeared that within a year after the injunction issued the demand for that class of beds fell off so much that it was unprofitable to manufacture them; that when suit was begun one of the defendants had on hand for sale 10 beds, and had spent some money in ad-

vertising. *Held*, that he should be allowed as damages a depreciation of one-half the cost price of the beds, interest on what he had paid for them, and his advertising expenses.

3. SAME.

The other defendant, who was the manufacturer, had a lot of beds on hand when the suit was instituted, and had made preparations to manufacture them on an extensive scale. *Held*, that he should be allowed as damages the difference between the present value and cost of making them, and the damage sustained from stoppage of business; but that he should not be allowed the profits he might have made if he had sold the beds, nor for storage, nor for interest on loss in value on the cost of the beds.

In Equity. On suggestion of damages for improperly obtaining injunction.

*Coburn & Thacher*, for complainant.

*Banning & Banning*, for defendant Meissner.

*Hutchinson & Partridge*, for defendants J. A. Colby & Co.

BLODGETT, J. An injunction was granted in this case on the application of the complainant, restraining the defendant from making and selling folding-beds containing the devices covered by the patent granted May 28, 1878, to H. P. Blackmore and C. S. Green, assignees of Hand and Caulier, for an "improvement in wardrobe bedsteads." The writ was granted after notice to the defendants, and a full hearing upon the question of infringement, but on the terms that complainant file a bond in the penal sum of $2,500, conditioned for the payment of such damages as defendants, or any of them, should sustain by reason of the wrongful issue of the writ; and such bond was duly filed. The case proceeded to final hearing on the issues made and proofs taken, and was dismissed for want of equity, on the ground that the bedsteads made by the defendants did not infringe the patent in question. On the dismissal, the defendants John A. Colby and Henry C. Colby, comprising the firm of J. A. Colby & Co., and the defendant Robert C. Meissner, each filed suggestions of damages sustained by them respectively by reason of the wrongful issue of the injunction; the defendant Meissner being the manufacturer of the bedstead in question, and the defendants J. A. Colby & Co. being furniture dealers in the city of Chicago, and having a contract with Meissner for the exclusive sale of such bedsteads for the term of one year. A reference was made to one of the masters of this court, to take proofs and report to the court the amount of damages which the respective defendants were entitled to recover from the complainant on the bond in this case. The master has taken proofs and reported, awarding to J. A. Colby & Co. the sum of $700 for their damages, and to Meissner the sum of $1,800 for his damages in the premises; and to this report the complainant has excepted on several grounds, but which may be stated in two propositions: (1) That this injunction, having been awarded after a hearing on the facts upon the judicial finding of the court that the defendants infringed the complainant's patent, no damages can be awarded for this erroneous finding of the court. (2) That the damages awarded each of the defendants are excessive.

The power of courts of equity, on application for a preliminary injunction *pendente lite* to require from the complainant a bond to indemnify the defendant sought to be enjoined, as a condition on which such injunction is granted, is too well established to be subject to question at this day. 2 Daniell, Ch. Pr. 1666; 2 High, Inj. § 946; Walk. Pat. § 688; *Shelly* v. *Brannan,* 4 Fish. Pat. Cas. 198; *Fruit-Jar Co.* v. *Whitney,* 1 Ban. & A. 361. Probably the better authority is that, if a preliminary injunction is granted after notice and hearing, without the requirement of a bond, the defendant is remediless, except in cases where the defendant is able to show that the complainant had no probable cause for the writ, and obtained it by imposition upon the court. *Gorton* v. *Brown,* 27 Ill. 489; *Sturgis* v. *Knapp,* 33 Vt. 486; *Cox* v. *Taylor,* 10 B. Mon. 17. But where the court grants an injunction on condition that a bond be filed to indemnify the defendant for damages he may sustain by it, the exacting of such bond is in effect a finding by the court that complainant's right to an injunction is so far doubtful or uncertain as to make it equitable to require a bond; and the complainant and sureties, by giving the bond, must be held to have accepted the terms on which the injunction was allowed, and cannot insist that the bond is inoperative to indemnify the defendant to the extent of the actual damages sustained; the elements of such damages and the amount thereof remaining to be determined by the court in a supplementary proceeding like this, or in a suit at law upon the bond itself.

This brings me to the consideration of the question as to whether the damages awarded by the master are excessive. The proof shows that, within less than a year after the issue of this injunction, the complainant found that the manufacture of this class of folding-beds, or wardrobe bedsteads, was unprofitable, and abandoned their manufacture for that reason; the fact being, as it seems from the testimony, that the public taste had changed in regard to this class of furniture; and also that there were defects in the special structure of such bedsteads that made them unacceptable after trial to the public; and the question in this case is, how much, if any, damages did the defendants sustain by reason of being restrained from making and selling this special form of folding-beds during the time this injunction remained in force? It also appears from the evidence that at the time the injunction was issued and served Meissner had made 55 bedsteads, which were adapted to use with the device covered by the complainant's patent, and that he had made a contract with the defendants J. A. Colby & Co., by which he was to furnish them with the bedsteads at a fixed scale of prices, according to the style and finish; and the Colbys were to have the exclusive right to sell them for one year. He had delivered to the Colbys 10 of these bedsteads, for which they were to pay him $820, and they had paid him $500 to apply on the beds so delivered. Colby & Co. sold none of the beds, and, so far as the proof shows, they all still remain on their hands. Neither has Colby paid to Meissner the $320 remaining due on the 10 beds delivered. The master allowed the Colbys as damages the $500 they had paid Meissner on account of the 10 beds bought, and interest at 6 per

cent., amounting to the sum of $96, and $104 for advertising, making a total of $700.

I gather from the master's report that the allowance of $500 to the Colbys was made upon the assumption that the 10 beds they had received from Meissner were totally worthless; and hence that the Colbys had lost practically the $500 which they had paid for them. I do not think the testimony justifies this conclusion; but, on the contrary, the proof, when taken together, I think, shows that all these Meissner beds are still available as furniture, with some slight changes in the springs, or modes of operating them, so as to make them acceptable to the public. It is true that folding-beds of the pattern in question are not as popular as they were at the time this invention was made, but they are still a standard article of furniture; and these Meissner beds, with some slight alterations in the mode of operating them, have still a marketable value. It is difficult to determine from the proofs in the case just what that marketable value is, although it is undoubtedly considerably less than it was at the time this injunction was granted; that is to say, the fancy, or craze, if I may call it so, for this kind of furniture has subsided, and the beds are now to be sold upon their merits, to meet such demand as there is in the market for them. These beds were sold to the Colbys on an average at a trifle over $82 each, and I think from the proof that I shall be entirely safe, and do no injustice to the Colbys, if I allow them a deduction of one-half of the cost price for the depreciation in the selling price of the beds, and the expenses for storing and alterations in order to put them upon the market, which, in round numbers, I make $410. This sum, it seems to me from the proof, will make the Colbys entirely whole for the damages they have sustained.

The master reported that Meissner's damages by reason of the issue of the injunction amounted to $3,000, made up of items as follows:

| | | |
|---|---|---:|
| Loss of profits on contract with Colby, | - | $1,150 |
| Loss on manufacturing the beds on hand, | - - - | 1,050 |
| Damage from stopping of business two months, | - - - | 300 |
| Storage of 44 beds from January, 1883, to November, 1885, | - | 300 |
| Interest on $1,050 loss in value on cost price of beds, at 6 per cent., | | 200 |
| | | $3,000 |

But, inasmuch as the bond was only for the penal sum of $2,500, he found that after paying the Colbys the $700 there was only $1,800 left from the proceeds of the bond to be awarded to Meissner, and hence reported that he was entitled to be awarded the sum of $1,800. As I have already said, Meissner had made in all 55 beds. He had sold 10 to the Colbys, had given 1 away, and had 44 still left on hand, partly finished. The item of $1,150 for loss of profit on the contract with Colby, which I assume means that if Colby had taken these 44 beds Meissner would have made $1,150 manufacturer's profit, is, as it seems to me, a wholly speculative loss. It does not follow that the Colbys would have sold even the 10 beds which they had already taken from Meissner, because, as the proof shows, the demand was then rapidly declining, and dealers were

obliged to make large concessions in prices in order to make sales at all; and I think the fair presumption from the proof is that the Colbys would have found it difficult to work off the 10 beds at any such profit as would have encouraged or justified them in taking any more from Meissner at any such price as would have afforded Meissner the large profit which he claims to have lost. In the light of the testimony in the case, it seems to me so entirely uncertain whether the defendant Meissner would ever have realized this $1,150 if not interfered with by the injunction, that it certainly comes within the domain of purely speculative profit, and hence should be disallowed. Meissner was left with the 44 beds on hand, and the master finds by the proof that his loss on those beds—that is, from depreciation in value below what it would cost to manufacture them — was $1,050. This finding, I think, is justified by the proof. The proof certainly shows that Meissner cannot now sell those beds in the market at a price which would make him good for the cost of their manufacture, and probably the master has fixed by the proof about the correct amount, or as near as any one can approximate to it, as to what would be Meissner's loss from depreciation. The proof also shows that as to 25 of these 44 beds, held over by Meissner, he might have put them upon the market, and sold them without interfering with the claims of the complainant's patent, although undoubtedly it was his purpose at the time he made them to put into them the devices which the complainant alleged would interfere with the patent. Very slight changes in the structure and operating parts of these beds would have enabled Meissner to have put them upon the market and sold them, if sales could have been made, without interfering with any of the claims of the complainant's patent; and hence I think Meissner is less entitled to the broad and equitable consideration of the court than he would have been if he had done what a prudent business man under the circumstances should have done to have avoided loss. The master also allowed Meissner the sum of $300 for damage on the stoppage of his business. It appears from the proof that Meissner had made extensive preparations for the manufacture of these beds, in order to fulfill his contract with Colby, and in anticipation that there would be a very large demand for them. But while I am satisfied from the proof that he would have been disappointed in anything like the large demand that he expected, at the same time I have no doubt that Meissner's business was to a considerable extent deranged at this particular time, and that the complainant should make some reparation for such derangement. I am not prepared to say that the master has, under the circumstances, made the estimate too large, and shall, therefore, leave that item of the master's finding to stand. The other items of storage, and interest on the loss in value, I do not think should be allowed. This gives to Meissner the sum of $1,050 depreciation in value, and $300 for the derangement of his business, making $1,350. The report of the master is, therefore, so modified as to award to the defendants J. A. Colby & Co. $700, and to the defendant Meissner the sum of $1,350.